BRITISH–AMERICAN INSURANCE COMPANY LIMITED, a Bahamian Corporation, and British-American Management Limited, a Bahamian Corporation, Plaintiffs,

v.

Laurence F. LEE, Jr. and Ruth W. Lee, his wife, Defendants.

Civ. A. No. 74–241.

United States District Court, D. Delaware.

Oct. 3, 1975.

Rodman Ward, Jr., and John H. Small, Prickett, Ward, Burt & Sanders, Wilmington, Del., for plaintiffs.

Vincent A. Theisen and Steven D. Goldberg, Theisen, Lank & Mulford, Wilmington, Del., for defendants.

## OPINION

LATCHUM, Chief Judge.

This case is before the Court on the defendants' motion to dismiss the action for improper venue.

The plaintiffs are British-American Insurance Company Limited ("B–A") and its wholly owned subsidiary British American Management Limited ("B–AM"), both of which are incorporated under the laws of the Bahamas and maintain their principal offices at Nassau, Bahamas. None of the plaintiffs' businesses is conducted in the United States. The defendants, Laurence F. Lee, Jr. ("Lee") and his wife Ruth W. Lee ("Ruth"), are citizens and residents of the State of Florida. The original complaint, filed on November 12, 1974, alleged in substance that the defendant Lee, who was B–A's chief executive officer and chairman of the board of directors at all times material hereto until February 18, 1974, used the McMillen Trust[1] to guarantee his complete domination of B–A's board, its officers and all of its affairs to achieve a continuous course of wrongful conduct which permitted the Lees to profit personally from B–A, to waste the corporate assets and to otherwise engage in conduct which was violative of Lee's fiduciary duties and obligations to B–A. Subject matter jurisdiction of the original complaint was based solely on diversity of citizenship under 28 U.S.C. § 1332(a)(2).[2] Property[3] belonging to the defendants and having a situs in Delaware was sequestered and attached pursuant to 10 Del.C. § 365 and § 3506; Del.Ch. Rule 4(db); Del.Super.Ct. Civil Rule 4(b); and Rule 4(e), F.R.Civ.P.

After the motion to dismiss for improper venue was filed, the plaintiffs on January 27, 1975 filed a "first amended complaint" which repeated the allegations of wrongs of the original complaint and added a claim of an alleged violation of the Securities Exchange Act of 1934 (the "'34 Act"), 15 U.S.C. § 78a

---

1. The McMillen Trust, of which the Wilmington Trust Company, Wilmington, Delaware is the present Trustee, is the legal owner of approximately 66% of B–A outstanding capital stock which gives the Trustee the power to elect all of B–A's directors. The Trust was established by a Trust Agreement dated February 28, 1927 executed by Alonzo B. McMillen and his wife, Florence O. McMillen, the settlors. The Trust is to continue during the lives of eleven named McMillen family members plus 21 years and provided that upon the death of the surviving settlor, the Trust income was to be distributed equally among the settlors' three daughters, and upon the death of any daughter, her one-third share of the income is to be distributed *per stirpes* to her lineal descendants. Upon termination of the Trust,

the corpus is to be distributed among the income beneficiaries in the same proportions in which they are entitled to receive income. The Trust agreement also provides that, with certain stated exceptions immaterial to this case, the B–A stock held by the Trustee "shall be voted as a unit" . . . "in such manner as the majority in interest of the beneficiaries in this trust may determine." Docket Item 47, Ex. 1, p. 5.

2. Docket Item 1, par. 3.

3. Defendants' property seized pursuant to the Order of Sequestration and/or Foreign Attachment was 267,406 shares of George Washington Corporation and sums due under an employment contract with Lee. (Docket Item 7).

*et seq.*[4] The added allegations charged that pursuant to a conspiracy with Ruth, Lee with the continuing approval and support of Wilmington Trust Comany, successor Trustee of the McMillen Trust, exercised dominion and control over B–A to prevent the registration of B–A's securities with the Securities and Exchange Commission in violation of Section 12(g) of the '34 Act, 15 U.S.C. § 78*l*, after such registration was required in 1967.[5] The Lees were served with a summons and the first amended complaint on February 13, 1975 pursuant to § 27 of the '34 Act, 15 U.S.C. § 78aa, and § 22 of the Securities Act of 1933, 15 U.S.C. § 77v.[6] Discovery initiated by the plaintiffs was, upon motion of the Lees, restricted to issues of jurisdiction and venue. On April 1, 1975, the plaintiffs filed a "second amended complaint" which substantially embodied all the allegations of the first amended complaint and added the further claim that the Lees, *inter alia,* by virtue of the control Lee exercised over B–A, engaged in a series of efforts to manipulate and inflate the over-the-counter market price of B–A unregistered shares by causing subsidiaries of Peninsular Life Insurance Company to buy B–A stock in order to maintain the market price of B–A's shares which the Lees had pledged as security for their personal loans.[7] This, the plaintiffs allege, was in violation of § 10(b) of the '34 Act, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder.

█ The defendants contend that whether jurisdiction of the second amended complaint is based on diversity jurisdiction, 28 U.S.C. § 1332(a)(2), or on violations of the '34 Act, venue is improper in this district. The Court agrees.

First with respect to the claims involving the violation of the '34 Act as alleged in the second amended complaint, venue is determined under § 27 of the '34 Act, 15 U.S.C. § 78aa. This section provides that an action to enforce any liability or duty created by the '34 Act or rules or regulations thereunder may be brought in any district (1) wherein any act or transaction constituting the violation occurred or where the defendant (2) is found, (3) is an inhabitant, or (4) transacts business.

The plaintiffs do not rely on venue over the defendants on the basis they were "found" or were "inhabitants" of the District of Delaware because the record shows that both defendants are non-residents of Delaware who actually reside in Orange Park, Florida.[8] Rather plaintiffs contend that venue properly exists here because § 27 allows suit to be brought "in the district wherein any act or transaction constituting the violation occurred." Citing *Puma v. Marriott,* 294 F.Supp. 1116, 1120 (D.Del.1969); *Jacobs v. Tenney,* 316 F.Supp. 151, 157–160 (D.Del.1970); *Prettner v. Aston,* 339 F.Supp. 273, 280 (D.Del.1972) and *Mayer v. Development Corporation of America,* 396 F.Supp. 917 (D.Del.1975), they argue that this provision of § 27 allows venue to be established in either of two ways: first, by showing that an act was committed in this district constituting a violation of the '34 Act, or alternatively, by showing that the act upon which venue is predicated was "an integral part of" or "of material importance to" the commission of the '34 Act violations. The plaintiffs also concede that "since none of the Lees' actions in this District are alleged to be, in themselves, illegal, venue here lies under the alternat[e] theory. . . ."[9] The plaintiffs assert that the basis on which venue should be predicated is the "control" that the Lees exercised over B–A and its subsidiaries through the McMillen Trust, which has a Delaware situs and which was and is

---

4. Docket Item 12.

5. Docket Item 12, p. 7.

6. Docket Item 27; § 27 provides for nationwide service of process.

7. Docket Item 39.

8. Docket Item 39; Docket Item 36, p. 4; Docket Item 47, Ex. 1, p. 87.

9. Docket Item 46, pp. 10–11.

administered in Wilmington. The argument runs that Lee, both through his personal contact with the Trustee and the personal influence he had with the Trust beneficiaries, was able to control the Trustee, the voting of the 66% of B–A's stock and in turn B–A, and that had not Lee been able to direct the voting of the B–A stock, held in Delaware, he would not have been able effectively to violate the '34 Act to prevent B–A from registering its stock with the Securities and Exchange Commission in violation of § 12 (g) or to manipulate the over-the-counter market of B–A's shares in violation of § 10(b). Such control and direction of B–A through the McMillen Trust in Delaware, plaintiffs say, is sufficient to support venue in Delaware because the control exercised here was "an integral part of" or "of material importance to" the commission of the two alleged violations of the '34 Act.

The difficulty, however, with this argument is the absence of sufficient factual support in the record. The evidence before the Court does not show that the McMillen Trustee was ever "controlled" or "dominated" by either of the Lees or by both of them. The record clearly shows (1) that Wilmington Trust, as successor Trustee of the McMillen Trust, holds legal title to approximately 66% of B–A's outstanding capital stock,[10] (2) that the Trust Agreement provides that the B–A stock shall be voted by the Trustee as a unit and in such manner as the majority in interest of the beneficiaries shall determine,[11] (3) that a Vice President of the Trustee voted B–A's shares held in trust at stockholders' meetings in Nassau, Bahamas in strict conformity with the written or oral instructions given by the majority in interest of the Trust beneficiaries at the time in being,[12] (4) that during the

period of time covered by the complaint, the beneficiaries of the Trust who instructed the Trustee as to the manner of voting the B–A stock were (a) Eileen McMillen Lee, one-third interest, mother of the defendant Lee, (b) Katherine McMillen Woodson, one-third interest, aunt of the defendant Lee, (c) Sheila Rodey Witte, until her death in June 1972, one-third interest, a first cousin of Lee, (d) Lonnie McMillen Sanchez, beginning in June 1972, one-sixth interest and (3) Katherine Morrison Faust, beginning in June 1972, one-sixth interest,[13] and (5) that defendant Lee never gave the Trustee instructions as to how to vote the stock and if such had been given which were contrary to the instructions of the beneficiaries they would not have been accepted.[14] The record is also clear that the Trust beneficiaries were and are all non-residents of the State of Delaware.[15] Even if Lee influenced the beneficiaries as to the voting instructions that they gave the Trustee by accepting his advice, these acts of influence did not take place in Delaware, but in those districts where the beneficiaries resided.[16] The Court is unable to conclude on this record that the Lees committed any acts of "control" in Delaware over the Trustee of the McMillen Trust that could be considered "an integral part of" or "of material importance to" the two alleged violations of the '34 Act.

Furthermore, while plaintiffs point out that Lee was in Wilmington on several different occasions from 1968 until May 30, 1973, most of these visits apparently related to either possible litigation or to litigation instituted by Wilmington Trust Company as Trustee of the McMillen Trust to obtain instructions from the Delaware Court of Chancery concerning (1) authority of the Trustee

10. Docket Item 47, Ex. 1, p. 8.

11. Docket Item 47, Ex. 1, p. 5; Docket Item 23, Ex. 1, pars. 3–5; Docket Item 42, Ex. 80.

12. Docket Item 23, Ex. 1, pars. 4–7; Docket Item 38, pp. 24–25, 30, 33.

13. Docket Item 23, Ex. 1, par. 4; Docket Item 47, Ex. 1, p. 7; Docket Item 38, pp. 9–11.

14. Docket Item 38, p. 33.

15. Docket Item 23, Ex. 1, par. 4.

16. Docket Item 36, pp. 142–143.

to hold shares in a holding company rather than shares in the insurance companies themselves, and (2) the right of the two minor daughters of Mrs. Witte to give the Trustee instructions for voting B–A shares after Mrs. Witte's death.[17] The Delaware Chancery suits were instituted by the Trustee of the McMillen Trust to obtain court instructions on how to vote B–A's stock as a unit since it had obtained conflicting instructions from the beneficiaries and there was a question of the right of Mrs. Witte's minor children to give such instructions.[18]

The Court is unable to conclude that either Lee's few and sporadic visits to Wilmington or the litigation instituted by the Trustee in the Delaware Chancery Court were acts which can be considered an "integral part of" or "of material importance to" or even a substantial step in perpetrating the two alleged violations of the '34 Act. These remote and insignificant actions are far too removed from the violations charged to be used as a device on which to predicate venue under § 27.

Nor can it be concluded that the Lees' visits to Wilmington in connection with the litigation and possible litigation by the Trustee of the McMillen Trust to seek instructions from the Delaware Chancery Court pertaining to the administration of the Trust, constitute "transacting of business" by the defendants in this district within the meaning of § 27. *United Industrial Corp. v. Nuclear Corp. of America,* 237 F.Supp. 971, 978–979 (D. Del.1964).

Plaintiffs also contend that venue in this case can be predicated on the "impact" that the foreign activities of the defendants had upon the shares of B–A stock held by the McMillen Trust in Delaware. The argument is advanced that Lee used facilities of interstate commerce to direct and influence the Delaware Trustee in order to maintain absolute control over B–A and in turn was thus

able (1) to prevent B–A from registering its securities with the Securities and Exchange Commission in Washington, D. C. in violation of § 12(g) of the '34 Act thereby avoiding disclosures of Lee's alleged corporate wrongdoing now asserted in the second amended complaint and (2) to manipulate B–A's securities on the over-the-counter market in New York City to the Lees' personal benefit and damage to B–A which ultimately resulted in loss to the shareholding Delaware McMillen Trust. In support of this theory, plaintiffs rely upon *Schoenbaum v. Firstbrook,* 405 F.2d 200 (C.A. 2, 1968), modified *en banc,* 2 Cir., 405 F.2d 215, cert. denied, 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed.2d 219 (1969); *Leasco Data Processing Equipment Corp. v. Maxwell,* 468 F.2d 1326 (C.A. 2, 1972); *Travis v. Anthes Imperial Limited,* 473 F.2d 515 (C.A. 8, 1973) and *Garner v. Pearson,* 374 F.Supp. 591 (M.D.Fla.1974). The *Schoenbaum* and *Leasco* cases, which involved fraudulent representations by foreign corporations which did no business in the United States, did not involve any question of venue but rather a question of subject-matter jurisdiction. *Schoenbaum* held that the District Court for the Southern District of New York had *subject-matter* jurisdiction of a complaint alleging fraudulent misrepresentation in violation of § 10(b) of the '34 Act, even when the fraudulent acts were all committed outside the United States and when the security was that of a foreign corporation doing no business in the United States, but where the fraudulent transactions involved stock registered and listed on a national exchange within the United States and are detrimental to American investors. Likewise, *Leasco* dealt only with subject-matter jurisdiction and jurisdiction over the person of the defendants under § 10(b). In *Travis,* also a § 10(b) action, the Court of Appeals for the Eighth Circuit did discuss venue. The complaint alleged that the defendants had made affirmative writ-

17. Docket Item 30; Docket Item 36, pp. 54–60, 69, 82–84, 87–90, 100–103, 119–121, 126–129, 133–134.

18. Docket Item 47, pp. 12–17; Docket Item 38, pp. 55–57; Docket Item 35.

ten misrepresentations to plaintiff shareholders of a Canadian corporation, who were Missouri citizens, in regard to a tender offer by one Canadian corporation for shares of another Canadian corporation, and the Court held that since many of the affirmative misrepresentations had been made in St. Louis, these were "acts and transactions constituting the violations" which occurred in that district within the meaning of that language in § 27. Similarly in the *Garner* case, the United States District Court for the District of Florida touched upon venue, when holding that it had subject-matter jurisdiction of an action under § 10(b) of the '34 Act that had been brought to redress the loss inflicted upon an investment bank by a covey of foreign shareholders, which loss had allegedly been caused in part by their wrongful sale of securities in the Florida District. However, in the instant case, unlike the facts in *Travis* and *Garner,* no direct act constituting a violation of the '34 Act occurred in this district.

Finally, plaintiffs, temporarily abandoning the claims under the '34 Act,[19] assert that since subject-matter jurisdiction of this action exists on the basis of the diversity of citizenship of the parties under 28 U.S.C. § 1332(a)(2), venue properly lies in this district under that portion of the provisions of 28 U.S.C. § 1391(a) which reads:

> "A civil action wherein jurisdiction is founded only on diversity of citizenship may . . . be brought only in the judicial district where all plaintiffs or all defendants reside, or *in which the claim arose."* (emphasis supplied).

■ Courts have found that the locus implied by the term "in which the claim arose" is not an easy matter to determine and consequently, mechanical rules for arriving at any answer have not been uniformly adopted. The best method for making such a determination appears to be by the adoption of a "weight of contacts test." See 1 Moore's Fed.Prac. p. 1434. *See Fox-Keller, Inc. v. Toyota Motor Sales, U.S.A. Inc.,* 338 F.Supp. 812, 815–816 (E.D.Pa.1972) ; *Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.,* 291 F.Supp. 252, 260–261 (E.D.Pa.1968). Applying the "weight of contacts test" to this case it clearly appears that the complaint seeks compensatory and punitive damages from defendants for Lee's alleged violation of his fiduciary duty owed to B–A as the dominant officer and director. The acts constituting the alleged wrongdoing were actually perpetrated upon B–A at its corporate domicile and principal place of business in the Bahamas. Moreover, as heretofore noted, those individual beneficiaries (all non-residents of Delaware) who had the right to direct the Delaware Trustee of the McMillen Trust as to how to vote the majority shares of B–A, if wrongfully influenced by the defendants, were so influenced outside of this district. The Delaware Trustee served only as a conduit for the non-resident beneficiaries in voting B–A's stock according to their directions, thereby placing the actual and effective control of B–A in districts outside of Delaware. Hence, the transmittal of the voting instructions through the Delaware Trustee was but an insignificant part of the aggregate of operative facts giving rise to the rights sought to be enforced in this lawsuit.

For the above reasons, the Court concludes that venue is not properly laid in this district under 28 U.S.C. § 1391(a) or under § 27 of the '34 Act, 15 U.S.C. § 78aa.

■■ Furthermore, since there is a complete absence of venue in this district on the claims asserted in the second amended complaint, the alternative writs of sequestration and foreign attachment must be vacated. This is so because while Rule 4(e), F.R.Civ.P., makes attachment processes authorized by state law available in a federal court,

---

19. See Docket Item 41, at 43–47.

that rule does not eliminate the ordinary requirements of federal venue. *United Industrial Corp. v. Nuclear Corp. of America*, 237 F.Supp. 971, 980 (D.Del. 1964); *Nowell v. Nowell*, 296 F.Supp. 640, 644 (D.Mass.1968), *aff'd*, 417 F.2d 902 (C.A. 1, 1969).

Although the Court has found that this action has been wrongly brought in this district because of improper venue, this does not necessarily end the case. 28 U.S.C. § 1406(a) provides:

"The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

Since the defendants are citizens and residents of Orange Park, Florida,[20] venue could be correctly asserted in the United States District Court for the Middle District of Florida whether subject-matter jurisdiction is based on diversity, 28 U.S.C. § 1332(a)(2), or on the '34 Act, 15 U.S.C. § 78aa. The Court thus finds that this action could have been brought in the Middle District of Florida. Rather than grant defendants' severe penalty of dismissal because plaintiffs have erroneously laid venue in this district, a defect which the defendants have not waived, the Court finds that in the interest of justice of getting judicial business transacted conveniently and expeditiously the case should be transferred under § 1406(a) to a district where venue may be properly asserted.[21]

Accordingly, an order will be entered transferring this case to the United States District Court for the Middle District of Florida.

---

20. Docket Item 36, p. 4. Orange Park is located very near Jacksonville, Florida within the territorial jurisdiction of the United States District Court for the Middle District of Florida.

21. Indeed, the plaintiffs in a footnote in their reply brief suggest transfer if venue is found to be improper in this district. Docket Item 46, p. 19, footnote.