Jack B. JACOBS, as Trustee in Dissolution of Market Publications, Inc., a dissolved Delaware Corporation, and John F. Reilly, Paul Abramson and Product Publications, Inc., a New Jersey Corporation, Individually, and representatively on behalf of former Class A Shareholders of Market Publications, Inc., Plaintiffs,

v.

Joseph J. HANSON, Alfred A. Spelbrink, Gralla Publications, Inc., a New York Corporation, and all persons and corporations, known and unknown, to whom Joseph J. Hanson and Alfred A. Spelbrink have or may have unlawfully transferred their assets, including but not limited to Elouise Spelbrink, and Alfred A. Spelbrink, Inc., Marketplace Publications, Inc., Conference Management Corporation, Communications Management Corporation, Folio Magazine Publishing Corp. (all Connecticut Corporations) and A, B, C, etc., Defendants.

Civ. A. No. 77–500.

United States District Court,
D. Delaware.

Feb. 6, 1979.

Rodman Ward, Jr., David B. Ripsom, and Richard A. Cohen, of Prickett, Ward, Burt & Sanders, Wilmington, Del., James B. Tyler, III, of Young, Conaway, Stargatt & Taylor, Wilmington, Del., for plaintiffs.

H. Murray Sawyer, Wilmington, Del., James A. Randel, of Silverberg, Marvin & Swaim, New Canaan, Conn., for defendants Joseph J. Hanson, Gralla Publications, Inc., Conference Management Corp., Communications Management Corp. and Folio Magazine Pub. Corp.

Steven D. Goldberg, of Theisen, Lank, Mulford & Goldberg, Wilmington, Del., Edward M. Sheehy, of Pullman, Conley, Bradley & Reeves, Bridgeport, Conn., for defendants Alfred A. Spelbrink, Elouise Spelbrink, Alfred A. Spelbrink, Inc., and Marketplace Publications, Inc.

## OPINION

STAPLETON, District Judge:

This is an action brought under Section 10(b) of the Securities and Exchange Act of 1934. It arose out of the 1976 liquidation of Market Publications, Inc. ("Market"), a Delaware corporation. Plaintiff Jack B. Jacobs is the trustee in dissolution of the corporation and plaintiffs Paul Abramson, John F. Reilly and Product Publications, Inc. were record and beneficial owners of Market stock at the time of the liquidation. Jacobs brought the action in his representative capacity and the other plaintiffs brought the action individually and on behalf of all persons, other than defendants, who owned Market stock at the time of liquidation. Defendants Joseph J. Hanson

("Hanson") and Alfred A. Spelbrink ("Spelbrink") held a majority of Market's stock and were directors and principal officers of the corporation. The plaintiffs allege that Hanson and Spelbrink unlawfully transferred their assets or those of Market to defendants Elouise Spelbrink, Alfred A. Spelbrink, Inc., Conference Management Corporation, Communications Management Corporation and A, B, C, etc.[1]

All of the defendants have moved to dismiss the complaint for failure to state a claim upon which relief may be granted and for lack of subject matter jurisdiction. Alternatively, they request that the Court dismiss or transfer the case on the grounds of improper venue or *forum non conveniens.*

I. THE MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM AND LACK OF SUBJECT MATTER JURISDICTION.

■■■ The plaintiffs and defendants both have filed affidavits and defendants' Rule 12(b)(6) motion will, therefore, be treated as one for summary judgment. *See* F.R.Civ.P. 12(c); *Moreland v. Western Pennsylvania Interscholastic Athletic League,* 572 F.2d 121 (3d Cir. 1978); 5 C. Wright and A. Miller, *Federal Practice & Procedure* § 1366 (1969). In ruling on the motion, the facts are to be viewed in the light most favorable to the plaintiffs, *Scott v. Plante,* 532 F.2d 939, 945 (3d Cir. 1976);

*see Goodman v. Mead Johnson & Company, et al.,* 534 F.2d 566, 573 (3d Cir. 1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977), and the motion should be granted only if the Court is "convinced . . . that no genuine issue as to a material fact remains for trial, and that the [defendants are] entitled to judgment as a matter of law." *Scott, supra,* at 945; *see Mortenson v. First Federal Savings and Loan Association,* 549 F.2d 884, 891 (3d Cir. 1977).

In their complaint the plaintiffs allege that the defendants violated Section 10(b)[2] and Rule 10b–5[3] by engaging in a course of conduct intended to cause Market's assets to be sold, pursuant to a plan of liquidation, on terms favorable to the individual defendants and unfavorable to Market's minority stockholders. In summary, they allege that Hanson directed notice to the Market shareholders of two special meetings. At the first meeting, a plan of complete liquidation and dissolution of Market proposed by Hanson and Spelbrink was purportedly approved by a majority of Market's shareholders. At the second meeting, Hanson and Spelbrink proposed a sale of Market's principal asset, a publication known as Health Care Product News, pursuant to an offer which included lucrative consulting and non-competition agreements for themselves. They also proposed sales of other Market assets to themselves. During this meeting

---

1. One defendant, Gralla Publications, Inc., was dismissed pursuant to stipulation.

2. Section 10 of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j, provides in pertinent part:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

3. Rule 10b–5, 17 C.F.R. § 240.10b–5, provides:

Employment of manipulative and deceptive devices.

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

it is alleged that Hanson and Spelbrink made numerous misrepresentations and neglected to disclose numerous material facts in order to induce the other shareholders to vote for these sales of assets and permit the liquidation of Market to be consummated.

In support of their motion, the defendants argue that no misrepresentations or omissions occurred. In addition, they argue that, if the alleged misrepresentations and omissions were made, (1) they were not "material" and (2) they were not made "in connection with the purchase or sale of any security . . . ."

In *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977), the Supreme Court held that an allegation of a breach of fiduciary duty by a majority stockholder does not state a cause of action under Section 10(b) absent any charge of misrepresentation or lack of disclosure. The defendants argue that, as a matter of fact on the present record, there were no misrepresentations or omissions and the alleged existence of a scheme to benefit the defendants at plaintiffs' expense is, accordingly, irrelevant.

■ It is true that many allegations of the complaint cast in terms of material misrepresentations and omissions constitute nothing more than allegations of breaches of fiduciary duty and could not provide a basis for Section 10(b) liability under the teachings of the *Santa Fe Industries* case. The transcript of the second stockholders meeting and the plaintiffs' affidavits, when viewed in the light most favorable to plaintiffs, however, do provide a basis for an inference that Hanson and Spelbrink described Market's financial condition at the time of the meeting in a manner which gave a false impression of its value. Thus, there is a material dispute of fact as to whether the defendants made misrepresentations.

Defendants do not argue that the alleged misstatements and omissions were not material in the sense that "a reasonable investor might have considered them important in the making of [their] decision." *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972). *Cf. Mills v. Electric Auto-Lite Company*, 396 U.S. 375, 384, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970). Rather, they argue that there is no causal relation between the alleged misstatements and omissions and the outcome of the shareholder vote, because Hanson and Spelbrink controlled a majority of the shares entitled to vote and the minority shareholders would have been powerless to prevent the alleged self-dealing on the part of Hanson and Spelbrink.

While it is clear that some element of causation is required to make out a private cause of action under Section 10(b), *see, e. g., Barnett v. Anaconda Company*, 238 F.Supp. 766 (S.D.N.Y.1965), it is not clear how proximate the causation need be. *See* A. Bromberg, *Securities Law, Fraud—SEC Rule 10b–5*, § 8.7(1) at 214 (1977). In this case, however, I think it relatively clear that the evidence supporting a causal connection between the alleged misrepresentation and the transactions giving rise to the loss is sufficient to bar summary judgment for the defendants. Hanson and Spelbrink testified during their depositions that, except with respect to their own offers to purchase corporate assets, they waited at the meeting for the minority shareholders to vote and then cast their votes in accordance with the votes of a majority of the minority. They chose this course in a situation where a suit by one minority stockholder was pending and other suits were feared as a possibility. Given this testing of the defendants and the fact that defendants were confronted with the prospect of having to justify their conduct in Court, a trier of fact might well conclude that the majority shares would not have been cast in favor of the challenged sales if a majority of the minority had not been persuaded to go along.

■ Moreover, I agree with those cases which suggest that a plaintiff in a Rule 10b–5 case can meet the requirement of causality by convincing the Court that a stockholder armed with what should have been disclosed might have secured an injunction barring the challenged transac-

tions. *Laurenzano v. Einbender*, 264 F.Supp. 356 (E.D.N.Y.1966); *cf. Cole v. Schenley Industries, Inc.*, 563 F.2d 35 (2d Cir. 1977); *Swanson v. American Consumer Industries, Inc.*, 415 F.2d 1326, 1331–32 (7th Cir. 1969). This may turn out to be such a case. While defendants stress that the stockholder who tried to enjoin the second meeting was unsuccessful, that fact does not demonstrate that he or someone else might not have met with greater success in seeking to enjoin consummation of the sales with the benefit of information showing the value of Market's business to be substantially more than represented.

Turning to the "in connection with a sale" requirement of the statute and rule, the plaintiffs and defendants agree that the dissolution of Market constituted a "forced sale" of the Market securities. (Defendants' Reply Brief, at 4). The defendants argue, however, that the alleged fraud or misrepresentations were not "in connection with" the forced sale of Market stock, but rather were in connection with the sale of the corporation's assets. Therefore, they maintain that the alleged fraud does not give rise to a cause of action under Section 10(b), citing *Superintendent of Insurance v. Bankers Life and Casualty Company*, 404 U.S. 6, 12, 92 S.Ct. 165, 30 L.Ed.2d 128 (1972); and *Ketchum v. Green*, 557 F.2d 1022, 1027–28 (3d Cir. 1977).

Viewing the evidence in the light most favorable to the plaintiffs, I cannot conclude as a matter of law that the alleged misrepresentations were not "in connection with" the dissolution of Market. To be sure, the sale of Market's assets is the part of defendants' scheme which is alleged to have directly conferred a benefit on defendants, but plaintiffs allege, and the record

tends to support the view, that the dissolution of Market was an essential and central element of that scheme. The defendants proposed a plan of liquidation and dissolution of Market at the first stockholders meeting and it was pursuant to that plan that assets sales were negotiated. In addition to tax considerations which the record shows were important considerations,[4] it is fair to infer that the proposal of this plan was in recognition of the fact that the stockholders did not wish to remain in business together and that the minority stockholders would be unlikely to support a sale of assets without the promise that they would receive their share of the proceeds in a dissolution. Thus, this is not a case like the *Ketchum* case, *supra*, in which the misrepresentations were in connection with one transaction (i. e. election of a board of directors) and the sale of plaintiffs' securities was a part of a separate transaction (i. e. the subsequent firing of plaintiff and the purchase of his stock by the corporation pursuant to a buy-out agreement). Rather it is a case in which misrepresentations were made to induce action on one step in a plan of dissolution. Accordingly, those misrepresentations were made in connection with the forced sale of securities.

I thus conclude that the complaint states a claim under Section 10(b) and Rule 10b–5 upon which relief could be granted. Since defendants' jurisdictional argument assumes that the complaint alleges only state law mismanagement claims and not a federal securities claim, it follows that defendants' Rule 12(b)(1) motion as well as their Rule 12(b)(6) motion must be denied.[5]

## II. VENUE.

Section 27 of the Exchange Act, 15 U.S.C. § 78aa, provides that venue lies in the dis-

---

**4.** The discussion at the stockholders meeting makes this clear. There is a specific reference to Section 337 of the Internal Revenue Code which makes the sale of corporation assets a non-taxable transaction when the sale is pursuant to a plan of liquidation and dissolution and there is a distribution to the stockholders within twelve months.

**5.** The defendants do not contest the existence of pendent jurisdiction over the state law

claims once jurisdiction over the Exchange Act claims is found to exist. (Defendants' Reply Brief at 27). It is clear to me that, under the standards set out in *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), I have jurisdiction to entertain the plaintiffs' state law claims. *See also Wilson v. American Chain and Cable Company*, 364 F.2d 558 (3d Cir. 1966); *Trivits v. Wilmington Institute*, 383 F.Supp. 457 (D.Del.1974).

trict (1) in which any act or transaction constituting the violation occurred, or in which the defendant (2) is found, (3) is an inhabitant or (4) transacts business. In this case the plaintiffs rely only on the first basis for establishing venue. In *Prettner v. Aston*, 339 F.Supp. 273, 280 (D.Del.1972), this Court summarized the judicial gloss on that statutory provision:

[T]his portion of Section 27 "does not require that the violative act or acts form the core of the claim. All that is required is but one act within the forum district which represents more than an immaterial part of the allegedly illegal events." Moreover, we have heretofore held the act committed in the forum district "need not *itself* constitute a violation of the Act in order to establish venue." The question, rather, is whether the act upon which venue is predicated is "an integral part of" or "of material importance to" the commission of the violation.

The acts which plaintiffs rely on to establish venue in this district are the filing of certificates of dissolution with the Delaware Secretary of State for Market and its two subsidiaries. (Paragraph 27(e) of the Complaint). The defendants argue that the filing of certificates of dissolution did not constitute an integral or material part of the alleged violation, citing *British-American Insurance Company Ltd. v. Lee*, 403 F.Supp. 31 (D.Del.1975).

In *British-American, supra*, the only act claimed to have occurred in Delaware was the exercise of control over the corporation through a trust having its situs in Delaware. The Court concluded that there was insufficient evidence in the record to support such a theory. Thus, the Court did not reach the question whether the alleged act would have been sufficient to support venue in this district.

I conclude that *Dauphin Corporation v. Redwall Corporation*, 201 F.Supp. 466 (D.Del.1962), and not *British-American, supra*, controls this case. In *Dauphin*, the filing of a corporate charter in Delaware was held to form an integral part of the Securities Act violation alleged in the complaint. The alleged Securities Act violation was the misrepresentation of the value of a note sold to the plaintiff pursuant to a plan or scheme to defraud. The plaintiff alleged that the corporation chartered in Delaware with the intention of using it as a conduit for the benefits the defendants were to receive from their sale of the note. Thus, the filing of the corporate charter in Delaware was held to form an integral part of the fraudulent scheme alleged in the complaint.

In the present case, defendants attempt to portray the dissolution of Market as an independent transaction, separate and apart from the sale of assets. Their brief asserts, for example:

Those papers (i. e. the certificate of dissolution) were filed specifically and exclusively to avoid severe Federal capital gains taxes upon the proceeds to shareholders from the sale of the assets to Gralla. Thus, the filing was a separate and independent and unrelated act.

(Defs. Reply Br. p. 43).

This statement of the argument understates the role of Market's dissolution in the alleged scheme. Nevertheless, I believe it illustrates the fallacy of defendants' position. The tax consequences referred to by defendant serve to explain in part why the asset sales were proposed as a part of a plan of complete liquidation and dissolution of Market and why the filing of the certificate of dissolution in Delaware was an integral and essential part of the alleged scheme.

■ I believe the conclusion is inescapable that the filing of the certificates of dissolution in Delaware were an integral part of, and of material importance to, the commission of the alleged Securities Act violation. It follows that venue is proper in this district.

### III. TRANSFER.

Defendants seek to have this action transferred to the District of Connecticut under 28 U.S.C. § 1404(a) which provides:

For the convenience of parties and witnesses, in the interest of justice, a Dis-

trict Court may transfer any civil action to any other district where it might have been brought.

The plaintiffs concede that this action could have been brought in the District of Connecticut and there are no traditional "interest of justice" factors which weigh significantly in favor or against transfer. Thus the question turns on weighing the convenience of the parties and witnesses, bearing in mind that " '[u]nless the balance of convenience . . . is *strongly* in favor of defendant, the plaintiff's choice of forum should prevail'." *Shutte v. Armco Steel Corporation*, 431 F.2d 22, 25 (3d Cir. 1970).

This is not a case, such as *Burroughs Wellcome Company v. Giant Food Incorporated*, 392 F.Supp. 761, 763 (D.Del.1975), in which the forum selected by the plaintiff is connected neither with the plaintiff nor with the subject matter of the lawsuit. The plaintiff-trustee is a Delaware resident serving at the direction of the Delaware Court of Chancery. Thus, the plaintiffs' choice of forum is entitled to the full weight it is accorded in "home turf" cases. *See General Instrument Corporation v. Mostek Corporation*, 417 F.Supp. 821, 822 (D.Del.1976).

As is usually the case when a motion to transfer is presented, it appears from the affidavit of Joseph Hanson that Connecticut is the more convenient forum for the individual defendants and their proposed witnesses. The three individual defendants reside in Connecticut, as do six of their seven proposed witnesses.[6] The seventh proposed witness resides in New York City.

The other side of the picture, however, is that Connecticut would not be more convenient for the plaintiffs or their proposed witnesses. It appears from the complaint and the affidavit of the plaintiff-trustee

that he and two of the plaintiffs' proposed witnesses—Arthur H. Krieger and Terry H. Gerber, accountants who have worked with Market's books—reside in Delaware. Obviously, Delaware is the most convenient forum for them. Connecticut is no more convenient than Delaware for the plaintiff John F. Reilly, who is a resident of Illinois. Nor is it more convenient for the rest of the plaintiffs' proposed witnesses: Thomas L. Dempsey, a competing bidder with Gralla Publications, Inc. for some of Market's assets, and Lee G. Seidman, a Market stockholder, both reside in Ohio. Raymond A. Jones, a former director of Market, is a resident of Florida. The only person on the plaintiffs' side who is geographically closer to Connecticut than to Delaware is Paul Abramson, who resides in Mamaroneck, New York.

While it is true that Connecticut residents outnumber Delaware residents among the pool of parties and potential witnesses, it is nevertheless true that a transfer to Connecticut would serve primarily to shift the burden of inconvenience from the plaintiffs' side to the defendants' rather than to reduce significantly the total amount of inconvenience associated with this litigation. Transfer in such a situation is not warranted. *Mayer v. Development Corporation*, 396 F.Supp. 917, 935 (D.Del. 1975).

Moreover, the degree of inconvenience demonstrated by the defendants is not substantial. The only inconvenience the defendants will suffer if this action remains in Delaware is the added time and expense required to travel to Wilmington for the trial. The trip by train from New Canaan, Connecticut, where the individual defendants have their places of business, to Wilmington takes approximately three hours. While the defendants may elect to remain

---

**6.** While it is true, as the plaintiffs argue, that the defendants have not particularized the content of their proposed witnesses' testimony, *see Burroughs Wellcome, supra*, at 763; *United Airlines v. United States*, 192 F.Supp. 795 (D.Del.1959), it is apparent that the proposed witnesses' testimony will be pertinent. Three of the proposed witnesses—Robert Dowling,

Michael Harvey-Smith, and Edith Gardner—were officers of Market and one—John Hartman—was a director. Milton and Lawrence Gralla are the principals of Gralla Publications, Inc. Dennis Marlowe, Esquire, was Market's attorney during the liquidation. Therefore, *it is appropriate to weigh the convenience of these witnesses in the balance.*

in Wilmington during the course of the trial, I conclude that the burden of doing so is not sufficient to overcome the presumption in favor of plaintiffs' choice of forum.

The motion to transfer, therefore, will be denied.

## IV. CONCLUSION.

The complaint in this action states a claim upon which relief could be granted under Section 10(b) of the Securities and Exchange Act of 1934 and this Court has jurisdiction to entertain the claim. Venue of the Section 10(b) claim properly lies in this district. A transfer of the action to the District of Connecticut would not be for the convenience of parties and witnesses. Therefore, the defendants' motion to dismiss or, in the alternative, to transfer this action to the District of Connecticut will be denied.