Elsa NATOWITZ, individually and on Behalf of all Limited Partners of LEXINGTON/56TH ASSOCIATES, and Lexington/56th Associates, a New York Limited Partnership by Elsa Natowitz, a Limited Partner, Plaintiffs,

v.

George MEHLMAN, Philip Wolitzer and Milton Kestenberg, all individually and as General Partners of Lexington/56th Associates, Mehlman Management Corp., Midlex Associates, Stephen Frank, Matthew Berger, Herbert Glabman, the Mastan Company Incorporated, Walter J. Schneider, Paul Green, Barry Traub, Helmsley-Spear, Inc., 56th/Lexington Associates, and Chemical Bank, Defendants.

No. 81 Civ. 7223 (KTD).

United States District Court,
S.D. New York.

June 28, 1983.

Willkie, Farr & Gallagher, New York City, for defendants Helmsley-Spear, Inc. and 56th/Lexington Associates; Howard C. Buschman III, Jack A. Pawa, New York City, of counsel.

Dollinger, Gonski & Grossman, Carle Place, N.Y., for defendants Stephen Frank, Matthew Berger, Herbert Glabman, Walter J. Schneider, Paul Green and Chemical Bank; Floyd G. Grossman, Carle Place, N.Y., of counsel.

Morris B. Gerstenhaber, New York City, for defendant Philip Wolitzer.

Solin & Breindel P.C., New York City, for plaintiff; Howard Breindel, New York City, of counsel.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

The plaintiff in the present action, Elsa Natowitz, a limited partner in Lexington/56th Associates ("Lex/56"), a New York limited partnership, alleges on behalf of herself and all other Lex/56 limited partners that Lex/56's general partners, George Mehlman, Philip Wolitzer, and Milton Kestenberg, and other persons named as defendants defrauded the partnership and rendered it worthless by either directing or participating in the assignments of a mortgage, the partnership's sole asset, without the knowledge or consent of the limited partners and without providing the partnership with any consideration for the transfers. Natowitz's original complaint charged one or all of the defendants with violations of section 10(b) of the Securities Exchange Act of 1934 ("1934 Act"), 15 U.S.C. § 78j(b) (1976), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5 (1982); violations of the New York securities anti-fraud act, N.Y.Gen.Bus.Law § 352–c (McKinney 1968 & Supp.1982–83); common law fraud; violations of section 98 of New York's partnership law, N.Y. Partnership Law § 98 (McKinney 1948); and breach of fiduciary duty. On June 22, 1982, on the motion of certain defendants, I dismissed the complaint in its entirety on the ground that Natowitz had failed to plead her allegations of fraud under the 1934 Act with the particularity required by Fed.R. Civ.P. 9(b). 542 F.Supp. 674. Dismissal of her federal securities law claim, which served as the sole predicate for federal jurisdiction, rendered inappropriate the exercise of pendent jurisdiction over her various state law claims. *Id.* at 676. However, I granted Natowitz leave to amend her complaint within twenty days of the filing of the June 22 Memorandum and Order, and on July 12, she served and filed an amended complaint which differs from the original complaint only in that it attempts to plead its allegations of fraud with more particu-

larity. Defendants 56th/Lexington Associates ("56th/Lex Assoc."), a New York partnership, Helmsley-Spear, Inc., a New York corporation, Wolitzer, Stephen Frank, Matthew Berger, Herbert Glabman, Paul Green, the estate of Walter J. Schneider, and Chemical Bank, a New York banking corporation, have now moved for dismissal of the amended complaint for the following reasons: (1) failure to state a federal claim upon which relief can be granted; (2) lack of subject matter jurisdiction over pendent New York state law claims; (3) incapacity of the plaintiffs to sue derivatively; and (4) failure, again, to plead fraud with particularity. Because I conclude that Natowitz's amended complaint fails to state a federal securities law claim under section 10(b) and Rule 10b–5, and because such a failure leaves this court without power to exercise pendent jurisdiction over her state law claims, defendants' motions for dismissal of Natowitz's amended complaint are granted.

## BACKGROUND

The facts alleged in Natowitz's amended complaint, which must be deemed true for the purposes of these motions to dismiss, *Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972), are detailed in my Memorandum and Order of June 22, 1982, and need only be summarized here. 542 F.Supp. at 675. Originally, Lex/56 had owned as its sole asset a two-thirds interest in a building located at 140–150 East 56th Street, New York, New York. Lex/56 subsequently sold its share in the building to 56th/Lex Assoc. and received in return a mortgage which then became Lex/56's sole asset.

Natowitz alleges that she purchased, at a time unstated, an interest in the Lex/56 limited partnership,

in reliance on the representations that the sole partnership asset (either the Building or, subsequently, the Mortgage) would not be sold or transferred without [the limited partners'] knowledge and written consent (as required by section 98

of the New York Partnership Law), but in any event, if such property were sold and transferred, it would not be for less than full and fair consideration to the Partnership.

Verified Amended Complaint at ¶ 22. Natowitz pleads that in violation of this representation, two of Lex/56's general partners, defendants Mehlman and Wolitzer, purportedly with the knowledge and participation of the other defendants, made assignments of Lex/56's mortgage interest without the knowledge or consent of the limited partners. Pursuant to the contracts of assignment, the monthly mortgage payments of 56th/Lex Assoc. and Helmsley-Spear, the managing agent of the building, were tendered to defendants Frank and Berger instead of to Lex/56. In consideration for the mortgage assignment, defendants Green, Frank, and Berger cancelled antecedent personal debts owed to them by defendant Mehlman. Since October, 1978, Lex/56 has not received any mortgage payments.

In support of her federal securities fraud claim, Natowitz alleges that the assignments of the mortgage, which deprived the partnership of its sole asset without consideration and without the knowledge or consent of the limited partners, precipitated a fraudulent "forced sale" of her partnership interest by rendering the partnership worthless, thereby converting each partnership interest into a mere claim for cash. Further, she alleges that the defendants' purported fraud was "in connection with" the forced sale.

## DISCUSSION

A claim under section 10(b) of the 1934 Act and Rule 10b–5 can only be established if the fraud is "in connection with the purchase or sale" of a security. 15 U.S.C. § 78j(b) (1976); 17 C.F.R. § 240.10b–5 (1982); *see Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). Natowitz argues that her amended complaint "plainly states a claim under Rule 10b–5."

Although acknowledging that the Lex/56 partnership is still intact and that she has not actually sold her securities, *cf. Bolger v. Laventhol, Krekstein, Horwath & Horwath,* 381 F.Supp. 260, 266 (S.D.N.Y.1974) (conversion of partnership interests into cash through dissolution of partnership constitutes a sale of securities); *Feldberg v. O'Connell,* 338 F.Supp. 744, 746 (D.Mass. 1972) (same), Natowitz nonetheless contends that since the purportedly fraudulent assignments of Lex/56's sole asset rendered the partnership worthless, she was a "forced seller" of securities under the rule of *Vine v. Beneficial Finance Co.,* 374 F.2d 627 (2d Cir.), *cert. denied,* 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 460 (1967). *Vine* held that a minority shareholder, still possessing his shares at the time the suit was commenced, had standing to sue under Rule 10b–5 on the ground that an allegedly fraudulently induced short-form merger placed him in a position where he had, as a practical matter, no option but to exchange his shares for cash, either by accepting the defendant corporation's cash offer or by pursuing his right of appraisal. The court concluded that since the plaintiff necessarily would be forced to become a party to a sale, "requiring him to do so as a condition to suit [would be] a needless formality." *Id.* at 634; *see also Feldberg v. O'Connell,* 338 F.Supp. at 746–47 (limited partners were "forced sellers" where, though the partnership was not yet dissolved, dissolution was rendered inevitable). Natowitz also contends that her amended complaint adequately alleges that the purported fraud was "in connection with" this forced sale.

Defendants, on the other hand, assert (1) that the *Vine* forced sale doctrine has been effectively negated or cut back by the Supreme Court's ruling in *Blue Chip Stamps, supra;* (2) that the doctrine is not applicable to the instant facts; and (3) that, in any event, the purported fraud was not "in connection with" the forced sale. Without reaching the forced sale questions, I grant defendants' motions for dismissal on the ground that the amended complaint has failed to set forth facts satisfying the "in connection with" requirement.

■ The gist of Natowitz's position is that the "in connection with" requirement is met because the purported fraud was the direct and proximate cause of the forced sale. Specifically, the partnership interests would never have been rendered worthless, thereby precipitating any forced sale, but for the fraudulent assignments of the mortgage. Natowitz, however, does not allege that defendants sought to effectuate or influence a transformation of the limited partnership interests into a claim for cash, that defendants' purpose was to achieve such a sale of the partnership interests through dissolution or otherwise, or that such a sale was necessary or even helpful to the accomplishment of defendants' fraudulent scheme. Indeed, the only conclusion that can be gleaned from the pleaded facts is that although defendants must have realized that the fraudulent assignments would render the partnership worthless, thereby causing a forced sale, they were indifferent to this result. The crucial question, therefore, is whether a direct and inevitable causal relationship between an alleged fraud and a subsequent sale is alone sufficient to satisfy the "in connection with" requirement. I find that it is not.

The leading Supreme Court case concerning the "in connection with" requirement is *Superintendent of Insurance v. Bankers Life & Casualty Co.,* 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971). In that case, a defendant had agreed to purchase all of the stock of Manhattan Casualty Company ("Manhattan") for $5 million, and, in conspiracy with other persons, drew a check for the purchase price. Defendants then replaced Manhattan's board of directors with new members and deliberately induced the newly constituted board to sell approximately $5 million of its securities, *i.e.,* United States Treasury bonds. The proceeds of the sale were then misappropriated by defendants, and used by them to cover the original check for the stock purchase. The

trustee of bankruptcy for Manhattan sued for violations of, *inter alia,* section 10(b).

Affirming the district court's dismissal of the complaint, the Second Circuit, reasoning that the alleged fraud involved only the misappropriation of bond proceeds and that this deception did not infect or affect the integrity of the securities transaction itself, held that the fraud was not connected with the sale. *Bankers Life,* 430 F.2d 355, 360 (2d Cir.1970), *rev'd,* 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971). The Supreme Court unanimously reversed, holding that the "in connection with" requirement was met because the plaintiff's injury was "a result of deceptive practices *touching* the sale of securities." 404 U.S. at 12–13, 92 S.Ct. at 169 (emphasis supplied).

*Bankers Life,* therefore, requires at a minimum that the fraudulent conduct must "touch" the securities transaction. *See United States v. Newman,* 664 F.2d 12, 18 (2d Cir.1981); *Chemical Bank v. Arthur Anderson & Co.,* 552 F.Supp. 439, 451–52 (S.D. N.Y.1982). Recognizing the ambiguity of the "touch" test, courts have stressed that this standard must be fleshed out on a case-by-case approach. *See, e.g., Brown v. Ivie,* 661 F.2d 62, 65 (5th Cir.1981), *cert. denied,* 455 U.S. 990, 102 S.Ct. 1614, 71 L.Ed.2d 850 (1982); *McGrath v. Zenith Radio Corporation,* 651 F.2d 458, 467 (7th Cir.), *cert. denied,* 454 U.S. 835, 102 S.Ct. 136, 70 L.Ed.2d 114 (1981); *Smallwood v. Pearl Brewing Co.,* 489 F.2d 579 (5th Cir.), *cert. denied,* 419 U.S. 873, 95 S.Ct. 134, 42 L.Ed.2d 113 (1974).

Natowitz's position that the fraudulent assignments of the mortgage "touched" her alleged forced sale by causing such a sale is not without some logic. The *Bankers Life* "touch" language, if taken literally, can encompass practically all instances of intracorporate mismanagement. Because any act which affects the financial health of a corporation will ultimately be reflected in the value of the corporation's stock, most modern business transactions in some sense "touch" the purchase or sale of securities.

*See Ketchum v. Green,* 557 F.2d 1022, 1027 (3rd Cir.), *cert. denied,* 434 U.S. 940, 98 S.Ct. 431, 54 L.Ed.2d 300 (1977); Note, *The Controlling Influence Standard in Rule 10b–5 Corporate Mismanagement Cases,* 86 Harv. L.Rev. 1007, 1013–14 (1973) [hereinafter *"Corporate Mismanagement"*]; *The Supreme Court, 1971 Term,* 86 Harv.L.Rev. 50, 263 (1972) [hereinafter *"1971 Term"*]. Nonetheless, the *Bankers Life* Court, which instructed that "section 10b must be read flexibly, not technically and restrictively," 404 U.S. at 12, 92 S.Ct. at 169, also cautioned that "Congress by section 10(b) did not seek to regulate transactions which constitute no more than internal corporate mismanagement." *Id.; see also Santa Fe Industries, Inc. v. Green,* 430 U.S. 462, 477–79, 97 S.Ct. 1292, 1302–04, 51 L.Ed.2d 480 (1977).

Indeed, the very facts from which the *Bankers Life* "touch test" arose indicate that an extreme interpretation of the test is unwarranted. In that case the sale of the Treasury bonds was not merely incidental to the fraud but was in fact an essential step in the implementation and accomplishment of the fraudulent scheme. In fact, many courts have subsequently interpreted the "touch test" to reach only those securities transactions which were necessary or helpful to the accomplishment of the fraud or were induced with the intent of making the fraud possible. *See, e.g., United States v. Newman,* 664 F.2d at 18 ("in connection with" requirement is met only when the plaintiff "has alleged a fraudulent scheme the accomplishment of which is directly related to the trading process"); *Competitive Associates, Inc. v. Laventhol, Krekstein, Horwath & Horwath,* 516 F.2d 811, 815 (2d Cir.1975); *Schlick v. Penn-Dixie Cement Corporation,* 507 F.2d 374, 381 (2d Cir.1974), *cert. denied,* 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975); *Landy v. Federal Deposit Insurance Corporation,* 486 F.2d 139, 159 (3d Cir.1973) (securities transaction must be "integral part" of fraudulent scheme), *cert. denied,* 416 U.S. 960, 94 S.Ct. 1979, 40 L.Ed.2d 312 (1974); *Jacobs v. Han-*

*son,* 464 F.Supp. 777, 781 (D.Del.1979) ("in connection with" requirement met where sale of securities "was an essential and central element of [the fraudulent] scheme"); *Lavin v. Data Systems Analysts, Inc.,* 443 F.Supp. 104, 108 (E.D.Pa.1977) ("at the very least, 'the securities transaction must have played some part in the overall fraudulent scheme'"), *aff'd mem.,* 578 F.2d 1374 (3d Cir.1978); *Rich v. Touche Ross & Co.,* 415 F.Supp. 95, 100 (S.D.N.Y.1976); *Bolger v. Laventhol, Krekstein, Horwath & Horwath,* 381 F.Supp. at 266; *see also Corporate Mismanagement, supra,* at 1014; *1971 Term, supra,* at 264. Accordingly, unless the relevant securities transaction was an integral or helpful component of the fraudulent scheme, such a scheme cannot be "in connection with" the purchase or sale of a security.

It is certain, moreover, that a securities transaction will not be considered integral or helpful to a fraudulent scheme merely because the fraud causes the purchase or sale. In *Vine, supra,* for instance, the Second Circuit, finding that a fraudulently induced short-form merger put plaintiff in a position in which he was forced to sell his securities to defendants, still required that this forced sale be a "part of a single fraudulent scheme" in order to satisfy the "in connection with" requirement. 374 F.2d at 635. The court then held that the fraud was "in connection with" the forced sale since the forced sale was deliberately induced by defendants as a necessary part of their overall scheme to defraud an entire class of shareholders of which plaintiff was a member. Another example is *Ketchum, supra.* In *Ketchum,* the defendants contrived by various misrepresentations to remove plaintiffs from their positions as officers of a corporation, and after this ouster was effectuated, defendants caused plaintiffs' employment to be terminated. This termination, in turn, forced plaintiffs to sell their company stock back to the corporation at a predetermined price pursuant to a requirement in the corporate

charter. Finding that the forced sale was only a *mere* consequence of the defendants' overall scheme, since the sale was not induced or needed to make possible the fraudulent ouster, the court held that "the purportedly deceptive practices occurred, if at all, in connection with the struggle for control of the corporation" and not in connection with the forced sale of securities. 557 F.2d at 1028; *cf. Brown v. Ivie,* 661 F.2d at 65; *McGrath v. Zenith Radio Corporation,* 651 F.2d at 467.

The present case plainly falls within the rationale of *Ketchum.* Natowitz's amended complaint fails to set forth facts showing that defendants' purportedly fraudulent assignments of the mortgage depended in any way on the dissolution of the Lex/56 partnership or that defendants deliberately sought to bring about that result. Although Natowitz's amended complaint clearly alleges that defendants had an intent to defraud the partnership of its sole asset, and although the alleged forced sale was necessarily a direct consequence of such fraud, it cannot be said that the forced sale was an integral or even helpful part of the fraud. Simply stated, the alleged forced sale resulted not from fraud in connection with the purchase or sale of securities but from fraud in connection with the sale of the partnership's assets. To the extent that authority exists to the contrary, *see Houlihan v. Anderson-Stokes, Inc.,* 434 F.Supp. 1330 (D.D.C.1977), I do not find such authority persuasive.

Because Natowitz has failed to allege facts sufficient to establish a federal securities law claim, and because such a failure renders inappropriate the exercise of pendent jurisdiction over her state claims, *Natowitz v. Mehlman,* 542 F.Supp. at 676, the amended complaint is dismissed in its entirety. Of course, Natowitz can still pursue her remedies in state court. As I noted in my previous Memorandum and Order concerning this case, the gravamen of the complaint alleges violations of state part-

nership laws. *Id.* In fact, papers submitted to this court indicate that a similar action, in which Natowitz can move to intervene, has been commenced in the New York County Supreme Court on behalf of the Lex/56 partnership.

The defendants' motions to dismiss the complaint are granted. The complaint is dismissed in its entirety.

SO ORDERED.