**HANOVER INSURANCE COMPANY**

v.

**TYCO INDUSTRIES, INC., Appellant, and J. Douglas Corey, Trustee in-Bankruptcy of Parkway Industries Company.**

No. 73–1615.

United States Court of Appeals, Third Circuit.

Argued Jan. 14, 1974.

Decided June 20, 1974.

A. Fred Ruttenberg, Archer, Greiner & Read, Camden, N. J., for appellant.

Albert B. Melnick, Jeffrey A. Weiner, Melnick, Muller, Morgan & Weinberg, Haddonfield, N. J., for J. Douglas Corey, trustee in bankruptcy.

Before SEITZ, Chief Judge, and KALODNER and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Chief Judge.

This interpleader action was instituted to resolve conflicting claims to the proceeds of a policy issued by Hanover Insurance Company ("Hanover") insuring Parkway Industries ("Parkway") generally against loss or theft of its property. Appeal is taken by Tyco Industries ("Tyco"), one of the claimants, from the district court's entry of summary judgment in favor of the Trustee in Bankruptcy for Parkway, the only other claimant to the insurance proceeds. The factual background for this action is, briefly, as follows.

Parkway agreed to purchase toys from Tyco. The toys were shipped by common carrier to Parkway's warehouse where the carrier left the trailer containing the toys. That night, before the toys had been unloaded from the trailer, the trailer was "hijacked" from Parkway's warehouse. Parkway, claiming that the toys had never been effectively delivered, refused to pay for the toys, and Tyco brought suit against Parkway in New Jersey state court to recover the purchase price. Before that suit was decided, Parkway filed a petition in bankruptcy and was adjudicated bankrupt.

The state court action was stayed during the initial bankruptcy proceedings by order of the Referee. Tyco asked the Referee to dissolve the stay, and the Trustee for Parkway petitioned for, inter alia, authorization to abandon parkway's defense of that suit.[1] Hanover agreed to assume defense of the lawsuit, the stay was dissolved, and, on finding that an effective delivery of the toys to Parkway had been made, the state court entered judgment for Tyco against Parkway on the debt. Tyco then filed a second action in state court to compel Hanover to pay Tyco the amount owed by Hanover to Parkway, on the insurance policy, and by Parkway to Tyco on the now-established debt. Because the Trustee also claimed the insurance proceeds, Hanover filed this interpleader action in the district court.

■ Tyco does not contend that any disputed material factual issues exist making the grant of summary judgment in the trustee's favor improper.[2] Instead, Tyco asserts that the district court erred in holding as a matter of law that the Trustee, and not Tyco, was entitled to the insurance proceeds paid into the court by Hanover. Certainly, absent the operation of some doctrine altering the general rule, these proceeds belong to the Trustee. The insurance policy protected Parkway against the loss or theft of any of its property. Parkway was the named beneficiary of this policy. Tyco was not a party to the insurance contract, nor was Tyco, expressly or constructively, an intended beneficiary; Parkway never undertook any obligation to insure the toys for the benefit of Tyco or to assign Tyco its insurance rights. The insurance policy, thus, did not secure Tyco's interest in the toys, but rather constituted a general asset of Parkway's.

■■ On his appointment, the Trustee was vested with title to all of Parkway's property, Bankruptcy Act § 70a, 11 U.S.C. § 110(a) (1970), including insurance policies and rights of action arising under them. See 4A Collier, Bankruptcy Para. 70.24 (14th ed. 1971) [hereinafter cited as Collier]. Not only did the Trustee hold title to Parkway's

---

1. The petition is discussed in more detail *infra*. The referee entered no order granting or denying this petition.

2. Indeed, Tyco as well as the Trustee moved for summary judgment below. The district court, without opinion, granted summary judgment for the Trustee and denied summary judgment for Tyco.

assets; he also was authorized, exclusively, to bring actions that could have been instituted by the bankrupt for the aggregation of assets and for the protection of creditors. 2 Collier Para. 47.05; 4A *id*. Para. 70.28 [1]. Were unsecured creditors, such as Tyco, allowed to sue a third party owing a debt to the bankrupt and thereby secure full payment of the unsecured claim, the bankruptcy law would be unable to effectuate one of its principal objectives: securing equivalent recoveries for all creditors of the same class. See Kothe v. R. C. Taylor Trust, 280 U. S. 224, 227, 50 S.Ct. 142, 74 L.Ed. 382 (1930); United States v. Embassy Restaurant, 359 U.S. 29, 31, 79 S.Ct. 554, 3 L.Ed.2d 601 (1959).

■ Tyco, however, contends that even if the Trustee was originally entitled to the insurance proceeds, he abandoned his claim to that asset and cannot reassert it in this action. In carrying out his statutory duty to maximize the bankrupt's estate, the Trustee may abandon his claim to any asset, including a cause of action, he deems less valuable than the cost of asserting that claim or administering the property. 4A Collier Paras. 70.28 [1], 70.42 [2]. The party seeking to show abandonment has the burden of persuading the court that the Trustee intended to abandon the asset. 4A Collier Paras. 70.28 n. 11, 70.42 [3]. Here, the proximate facts concerning the Trustee's actions or inaction are not in dispute; Tyco and the Trustee differ, however, as to whether the ultimate fact of abandonment can be inferred from this record.

■ Tyco contends that the Trustee's petition to abandon defense of the initial state court suit against Parkway evidences his intent to abandon any claim against Hanover on the insurance policy for loss of the toys. We disagree. Logically, the Trustee's decision not to defend against Tyco's suit is completely consistent with his present assertion of a claim to the insurance proceeds. To defend the action would have cost money; a successful defense would have precluded the addition of Tyco's claim against Parkway to the claims of other general creditors seeking some satisfaction out of the residue of Parkway's estate; unless the amount Tyco would probably receive on its claim, and thus the amount by which the recoveries of other unsecured creditors would be diminished, exceeded the cost of defending the lawsuit, such defense would have resulted in a net loss to the bankrupt's estate.[3] On the other hand, Tyco's success in the suit against Parkway offered the possibility of a net gain to the bankrupt's estate, particularly if the Trustee by not defending incurred no expenses —by establishing that the toys had been delivered to Parkway, the disputed element of Tyco's cause of action on the debt, the suit would simultaneously establish the fact not conceded by Hanover necessary to Hanover's liability on the insurance policy. The net estate would be increased by the difference between the recovery obtained by the Trustee from Hanover and the proportionately smaller amount paid Tyco as a general creditor on its claim for the debt.

It is apparent, therefore, that an intent to assert, rather than to abandon, any claim he might have against Hanover should be inferred from the Trustee's petition. Tyco, however, argues that specific language in the petition demonstrates that the Trustee intended to abandon not only defense of Tyco's lawsuit, but also any claim against Han-

3. The Trustee's petition expressly stated his judgment that the probable costs of the litigation would exceed any return to the general creditors:

Your applicant further represents that it would not be for the best interest of the creditors for the bankrupt to proceed to defend said law suit. That the attorneys fees and other expenses involved would be prohibitive insofar as any ultimate return to the creditors is concerned. That as a practical matter even if the law suit were successfully defended, these expenses would probably exceed the amount by which any dividend to general creditors would be increased and there would be probably a net loss insofar as general creditors are concerned.

over arising from Parkway's loss of the toys. In support of this argument, Tyco first points to a portion of the Trustee's petition stating that Parkway's insurance would "cover any loss occasion [sic] by this highjacking if it were ultimately found to be the fact that the [toys were] highjacked from the possession of the bankrupt." The petition next stated that Hanover denied that the toys when stolen were property of Parkway covered by the insurance policy. Far from constituting clear evidence of the Trustee's intent that Hanover, if liable would pay Tyco and not the Trustee, the petition's language appears designed to show that Parkway's creditors would not be harmed if the Trustee was permitted to abandon defense of the lawsuit because, if the suit was lost by Parkway, Hanover, which then denied coverage, would be required to pay the Trustee for the loss.

Tyco next contends that the petition's request that the Referee require Hanover to defend against Tyco's initial suit reflects the Trustee's intent to allow Tyco to obtain payment from Hanover. This contention reflects Tyco's confusion on the matter central to this dispute. Tyco's cause of action against Parkway for the purchase price of the toys is wholly distinct from Parkway's right of action, now vested in the Trustee, for payment of the value of the stolen toys as required by the insurance contract. Two different and unrelated contracts are involved. Tyco's confusion is caused by a fortuitous overlap: Parkway was a party to both contracts, and whether the toys were delivered to Parkway was an element of the disputes on both contracts. If the toys were delivered, title to them, and risk of loss, had passed to Parkway before they were stolen; under the sales contract, Parkway then was liable to Tyco for their agreed on value, and under the insurance contract, Hanover was liable to Parkway for their actual value at the time the toys were stolen. Since proof of delivery was necessary to establish Hanover's liability, as well as Parkway's, the Trustee recog-

nized that Hanover had an interest in defending in Tyco's suit against Parkway. The Trustee's petition neither expressly nor implicitly declares that Hanover must defend because there is simply a single liability running from Hanover to Tyco. Because Hanover insured Parkway against loss, not against liability, the two liabilities differ in theory; because Parkway is insolvent, the two liabilities also differ in fact. We do not find the Trustee's request that Hanover defend the initial suit indicative of an intent to relinquish Parkway's claim against Hanover on the insurance policy.

Finally, Tyco seeks to show abandonment from the Trustee's request in his petition that "in the event that said Hanover Insurance Company does not defend said law suit that it be barred from hereinafter asserting any claim of any nature against the within estate based on any claim that it might have by virtue of any payment made to Tyco Industries, Inc. in connection with the cause of action stated in the above entitled suit . . . ." Although this ambiguous prayer could, as Tyco suggests, be read as evidencing the Trustee's belief that Tyco might obtain a recovery from Hanover, we find that the statement by itself is insufficient to support an inference, for which Tyco has the burden of persuasion, that the Trustee intended to abandon any claim against Hanover.

■ Tyco advances several contentions to the effect that the Trustee is barred from asserting any claim to the insurance proceeds; Tyco claims the benefits of equitable estoppel, res judicata from the Referee's grant of Tyco's motion to dissolve the stay of its initial action, and res judicata from the judgment in its suit against Parkway. These contentions are all bottomed on Tyco's view of the distinct liabilities of Parkway and Hanover as unitary. No equitable estoppel is shown, because, as discussed above, the Trustee's petition to abandon defense of the initial law suit by Tyco did not evidence a position inconsistent with his present claim of the in-

surance proceeds.[4] Neither the Referee's decision allowing Tyco's action to proceed nor the state court judgment finding Parkway liable on its debt to Tyco resolved Tyco's or the Trustee's entitlement to payment by Hanover on the insurance policy. We, therefore, reject Tyco's contentions that the Trustee is barred from claiming the insurance proceeds.

The judgment of the district court will be affirmed.

4. We believe that the evidence not only fails to show intent to abandon, but also fails to show any act from which Tyco could reasonably have assumed that the trustee had abandoned and on which Tyco could have reasonably relied to its detriment. See Twentieth Century-Fox Film Corp. v. National Publish., Inc., 294 F.Supp. 10, 12 (S.D.N.Y.1968).