Steven Charles SEAWELL, et al., Plaintiffs,

v.

MILLER BREWING COMPANY, et al., Defendants.

No. C–82–1224–G.

United States District Court, M.D. North Carolina, Greensboro Division.

Dec. 12, 1983.

Stephen S. Schmidly, Greensboro, N.C., for plaintiffs.

Jonathan R. Harkavy, Greensboro, N.C., Robert H. Stropp, Jr., Birmingham, Ala., Martin N. Erwin, Greensboro, N.C., Irvin B. Nathan, John Kronstadt, Thomas Mengler, Washington, D.C., Warren H. Dunn, William Schmus, James Koester, Milwaukee, Wis., for defendants.

## MEMORANDUM OPINION

ERWIN, District Judge.

This civil action is brought pursuant to the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968. Plaintiffs Wesley Phillips and Steven Seawell contend that a delay in their hiring in 1977 and 1978 was occasioned by an allegedly collusive agreement between defendants Miller Brewing Company (Miller) and United Steelworkers of America (Steelworkers) under which Miller, in hiring workers for its Eden, North Carolina brewery, favored applicants who supported the Steelworkers Union over others. Plaintiffs contend that the diminished seniority resulting from the delay in their hiring caused them to be among those subsequently furloughed. Plaintiffs seek injunctive relief and $75,000,000 in treble damages under RICO, 18 U.S.C. § 1964(c), on behalf of themselves and a proposed class of allegedly similarly situated employees.

The complaint in this action was filed on December 3, 1982. Defendants have since moved on several grounds to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted or, in the alternative, for summary judgment pursuant to Fed.R. Civ.P. 56. For the reasons set out below, defendants' motions for summary judgment are granted, and the action is dismissed.

*Background*[1]

In the fall of 1977, Miller began to hire personnel to operate its new brewery at Eden, North Carolina. Soon thereafter,

---

1. Because this case comes before the court on defendants' motions for summary judgment, the following description of the facts is drawn from plaintiffs' complaint, viewing its allegations in the light most favorable to plaintiffs, and from the uncontroverted affidavits presented by defendants in support of their motion.

two unions—the Steelworkers and the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (Teamsters)—opened competing organizational campaigns to be elected as the exclusive bargaining agent of the employees Miller was about to hire.

As a result of the representational election in May 1978, the Teamsters were selected as the exclusive bargaining agent of the Miller employees at the Eden plant. Thereafter, the Teamsters and Miller entered into a collective bargaining agreement effective September 1978. The contract established the basis for seniority for all covered employees at the Eden plant and provided that all grievances, including those relating to seniority and layoffs, would be subject to binding, mandatory arbitration.

Plaintiffs applied for positions at the Eden plant in October 1977 and were hired by Miller in December 1978. Their seniority was established at that time in accordance with the collective bargaining agreement negotiated by the Teamsters. In January 1979, plaintiffs were among those laid off on the basis of seniority. They were reinstated later that month. Thereafter, they were laid off and reinstated on a number of occasions. The most recent layoff was in July 1982.

In the complaint, plaintiffs charged that the delay in their hiring from October 1977 to December 1978 resulted from the alleged agreement between the Steelworkers and Miller under which Miller would give preferential consideration to applicants favored by the Steelworkers. Plaintiffs contend that the resulting delay in their employment reduced their seniority positions at the brewery, and that their reduced seniority contributed to their subsequent layoffs.

The complaint proceeds under Section 1964(c) of RICO. That section provides that:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

18 U.S.C. § 1964(c). Plaintiffs rely on Subsection (c) of Section 1962 which makes it illegal for anyone employed by or associated with an enterprise engaged in interstate commerce to participate "in the conduct of [its] affairs through a pattern of racketeering activity."[2] A "pattern of racketeering activity" includes any two acts of "racketeering activity" within a ten-year period. See 18 U.S.C. § 1961(5). The predicate acts constituting "racketeering activity" encompass numerous state and federal crimes.

In the instant case, the plaintiffs contend the defendant entered into an illegal agreement whereby the defendant Miller allowed the defendant Steelworkers to select the employees it would hire in violation of the criminal kickback, bribery, and corruption provision of the Taft-Hartley Act, 29 U.S.C. § 186.[3]

---

**2.** Title 18 of the United States Code, Section 1962(c) provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

**3.** Title 29 of the United States Code, Section 186 entitled "Restrictions on Financial transaction" was originally enacted as part of the Labor-Management Relations (Taft-Hartley) Act of 1947, ch. 120, § 302, 61 Stat. 136, 157. It provides in pertinent part:

(a) It shall be unlawful for any employer ... to pay, lend, or deliver, or agree to pay, lend, or deliver, any money or other thing of value ... (2) to any labor organization, or any officer or employee thereof, which represents, seeks to represent, or would admit to membership, any of the employees of such employer who are employed in an industry affecting commerce; ... (b)(1) It shall be unlawful for any person to request, demand, receive, or accept, or agree to receive or accept, any payment, loan, or delivery of any money or other thing of value prohibited by subsection (a) of this section.

Defendants have presented several arguments supporting their motions for summary judgment. *First,* they contend that plaintiffs' claims are barred by the pertinent statute of limitations because plaintiffs knew or should have known of their alleged injury more than three years before they filed suit. *Second,* defendants argue that this court lacks subject-matter jurisdiction over the claims because they essentially involve allegations of unfair labor practices—discriminatory hiring—which are within the exclusive jurisdiction of the National Labor Relations Board and which were considered and dismissed by the NLRB. *Third,* they contend that plaintiffs' claims, involving questions of seniority and layoffs, are subject to the mandatory, final, and binding grievance and arbitration procedure set forth in the collective bargaining agreement entered into by Miller and the plaintiffs' union. *Fourth,* they argue that plaintiffs' allegations do not make out a claim under 29 U.S.C. § 186 (the RICO "predicate" offense on which plaintiffs rely), which is intended to prevent the corruption of labor unions through bribes and kickbacks and which, defendants contend, has no bearing on the alleged unfair hiring practices that the complaint describes. *Finally,* defendants argue that plaintiffs' claims are materially deficient under the RICO statute in several respects, including that plaintiffs were not injured "by reason of" the alleged RICO violations; defendants contend that the causal connection between the alleged violation and the alleged injury was broken by the collective bargaining agreement, which was negotiated by plaintiffs' union subsequent to defendants' alleged misconduct, and which governed layoffs and seniority rights.

It is well settled that on a motion for summary judgment, the moving party has the burden of establishing the absence of any genuine issue of material fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). In addition, the court, in assessing whether the movant has carried this burden, must view the facts alleged in the light most favorable to the opposing party.

*United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

Upon careful consideration of the allegations in this case and of the evidence presented supporting and opposing defendants' motions for summary judgment, this court concludes that defendants' motions must be granted. *First,* defendants have presented uncontroverted evidence that plaintiffs at the very least should have known of their cause of action more than three years before December 1982, when they filed the present suit; their claim is therefore time-barred. *Second,* the uncontroverted facts demonstrate the absence of the requisite causal connection between the injuries complained of and the RICO violations alleged.

### Statute of Limitations

The RICO statute does not contain a statute of limitations governing private civil actions. Instead, under established principles, a statutory period for the federal cause of action is determined by reference to the law of the forum state: the correct period is the one applicable to state claims most closely analogous to those created by RICO. *See Board of Regents v. Tomanio,* 446 U.S. 478, 483–84, 100 S.Ct. 1790, 1794–95, 64 L.Ed.2d 440 (1980); *Johnson v. Davis,* 582 F.2d 1316 (4th Cir.1978); *Gilbert v. Bagley,* [Current] Fed.Sec.L.Rep. (CCH) ¶ 99,483 (M.D.N.C. Sept. 17, 1983). It is therefore necessary to look to North Carolina law for the appropriate limitations period.

The relevant state statute is N.C.Gen. Stat. § 1–52(2), which provides a three-year period within which a party may bring claims "[u]pon a liability created by statute, either state or federal." The question of when the plaintiffs' action accrued (and, therefore, when the three-year limitations period began to run) is a matter of federal, not state, law. *See Rawlings v. Ray,* 312 U.S. 96, 98, 61 S.Ct. 473, 474, 85 L.Ed. 605 (1941); *Gilbert v. Bagley, supra.* Federal law, moreover, determines accrual by the date when plaintiffs knew or should have

known of the alleged injuries underlying their complaint. *Cox v. Stanton,* 529 F.2d 47, 50 (4th Cir.1975). Accordingly, the question for this court on defendants' motions for summary judgment is whether there is any genuine question that plaintiffs in fact knew or at least reasonably should have known of their injuries before December 3, 1979, three years before their complaint was filed.

■ Defendants have presented the following uncontested facts relating to the issue of plaintiffs' actual or constructive knowledge of their claims:

1. During the early months of 1978, while the rival organizational campaigns were being conducted at the Eden brewery by the Steelworkers and the Teamsters unions, the Teamsters filed several charges with the NLRB claiming that Miller, in order to assist the Steelworkers' organizational efforts, had discriminated in its hiring practices against applicants who were associated with the Teamsters.[4] In one such complaint, for example, the Teamsters asserted:

> Specifically, management has and continues to actively collude with representatives of Steelworkers to intimidate employees who have actively indicated a preference for the Teamsters and to selectively employ persons previously designated by the Steelworkers and to exclude or discharge employees favorable to the Teamsters.[5]

The NLRB subsequently investigated and rejected all of these charges.

2. The Teamsters publicized the NLRB charges in a February 16, 1978 letter to all affiliated locals in the country, stating:

> In order to keep the Teamsters out [of the Eden brewery], Miller met with representatives of the Steelworkers Union

before hiring started and worked out a deal to guarantee that the Steelworkers would win recognition at the brewery.[6]

3. The Teamsters further publicized their charges by handing out leaflets outside the Eden brewery during the campaign in the spring of 1978. Some of these leaflets repeated the charge of collusion between Miller and the Steelworkers. One, for example, claimed that a

> secret meeting between the Steelworkers representatives and Miller top brass ... was held before hiring [at Eden] started, at which a deal was made to "plant" Steelworkers in the brewery.[7]

4. Plaintiffs Seawell and Phillips were observed distributing leaflets outside the Eden plant during the same period of time that the leaflets quoted above were being distributed.[8] Plaintiffs were seen personally handing out leaflets that asserted:

> [W]e know the Steelworkers Union leaders have held us back from getting jobs because we refused to help them win the election here.[9]

5. In September 1979, the Teamsters sent a letter to its membership at the Miller plant, which then included the plaintiffs in this action, reviewing Miller's alleged efforts to exclude the Teamsters from its breweries, and stating:

> The next plant was built in Eden, No. Carolina and this time the Miller Co. made a deal with the United Steelworkers Union. Nobody knows better than our members at Eden how hard the Company worked to keep us out. But we upset them with the help of the Eden employees.[10]

6. After being hired in December 1978, plaintiffs were laid off in January 1979; this was done in accordance with their seniority rights, which, under the governing

---

4. Case No. 11–CA–7468 (filed Feb. 16, 1978); Case No. 11–CA–7549 (filed Mar. 31, 1978); Case No. 11–CA–7624 (filed May 8, 1978); Case No. 11–CA–7721 (filed July 3, 1978).

5. Case No. 11–CA–7468 (filed Feb. 16, 1978).

6. This letter is appended as Exhibit 3 to the affidavit of John W. Rhind.

7. Affidavit of Eugene Gray, Ex. 2.

8. *Id.,* ¶ III; Sherrill Deposition at 48.

9. Gray Affidavit ¶ III; Sherrill Deposition at 52.

10. Rhind Affidavit, Ex. 4.

collective bargaining agreement, were established as of the date they were hired. Plaintiffs were recalled later that month. They were again laid off in September 1979 and again recalled in November of that year.[11]

These factual allegations by defendants stand unrebutted by plaintiffs. Moreover, all of the events to which defendants advert occurred more than three years before plaintiffs filed the instant lawsuit. Together, they establish convincingly that, at the very least, plaintiffs should have known at that time about the injuries of which they now complain and the reasons for those injuries. The publicity surrounding the 1978 organizational campaigns, including the distribution of leaflets by plaintiffs themselves, makes it difficult to imagine how plaintiffs, or anyone else concerned with the 1977–1978 employment issues at the Eden plant, could have lacked actual knowledge that there was alleged to be a collusive agreement between defendants to exclude Teamster adherents. In addition, the fact that plaintiffs were laid off twice during 1979 and that these layoffs were the result of plaintiffs' seniority status as established by their December 1978 hiring date, clearly alerted them to the potentially injurious consequences of the delay in their employment.

Under applicable principles of law, this showing by defendants is sufficient to charge plaintiffs with knowledge of their claims prior to December 1979. Constructive knowledge is established when a party learns of facts "calculated to excite inquiry," or when the party hears "rumors or vague charges" that are "of sufficient substance to arouse suspicion." *Clement A. Evans & Co. v. McAlpine,* 434 F.2d 100, 102 (5th Cir.1970), *cert. denied,* 492 U.S. 988, 91 S.Ct. 1660, 29 L.Ed.2d 153 (1971). Thus, "[a]ny fact that should excite [plaintiff's] suspicion is the same as actual knowledge of his entire claim. Indeed, 'the means of knowledge are the same thing in effect as knowledge itself.' " *Dayco Corp. v. Goodyear Tire & Rubber Co.,* 523 F.2d 389, 394 (6th Cir.1975) (quoting *Wood v. Carpenter,* 101 U.S. 135, 143, 25 L.Ed. 807 (1879)). As the fourth circuit has stated in describing the standard of constructive knowledge:

"A man should not be allowed to close his eyes to facts readily observable by ordinary attention, and maintain for his own advantage the position of ignorance. Such a principle would enable a careless man, and by reason of his carelessness, to extend his right to recover for an indefinite length of time, and thus defeat the very purpose the statute was designed and framed to accomplish. In such case, a man's failure to note facts of this character should be imputed to him for knowledge, and ... the cause of action will be deemed to have accrued ...." *Fulcher v. United States,* 696 F.2d 1073, 1077 (4th Cir.1982) (Quoting *Peacock v. Barnes,* 142 N.C. 215, 218, 55 S.E. 99, 102 (1906)).

The only material response that plaintiffs have made to defendants' showing of actual or constructive knowledge is by way of a general denial: affidavits filed by both plaintiffs assert that they "did not learn of the underlying facts alleged in this complaint until August, 1982."[12] This essentially reiterates the assertion in the original complaint that plaintiffs "only recently discovered that the defendants had engaged in the illegal acts and agreement of which the plaintiffs complain."[13] Although plaintiffs maintain that all facts asserted in the complaint must be deemed true for purposes of a motion for summary judgment, the general allegations upon which plaintiffs rely are simply insufficient as a matter of law to put in issue the question of plaintiffs' constructive knowledge of their claims prior to December 1979.

---

11. *Id.,* ¶ 9.

12. April 20, 1983 Affidavit of Steven Charles Seawell, ¶ 3; April 20, 1983 Affidavit of Wesley Lee Phillips, ¶ 3.

13. Complaint, ¶ 30.

**430**

The requirements of Fed.R.Civ.P. 56(e) are plain:

> When a motion for summary judgment is made and supported as provided in this rule, *an adverse party may not rest upon the mere allegations or denials of his pleading,* but his response, by affidavits or as otherwise provided in this rule, *must set forth specific facts showing that there is a genuine issue for trial.* (Emphasis supplied.)

Thus, when a moving party presents a convincing showing that there is no genuine factual dispute as to a particular issue, the opponent may not rest on the allegations of his complaint or simply deny the movant's showing; rather, he must present *specific facts* in rebuttal. *Atlantic States Construction Co. v. Robert E. Lee & Co.,* 406 F.2d 827 (4th Cir.1969); 6 Moore's Federal Practice ¶ 56.22[1]. Plaintiffs, however, have failed to comply with the rule's admonition: they have rested on the bare allegations of their complaint, answering defendants' showing with general denials rather than specific facts. Moreover, plaintiffs' denials, legally insufficient as they are, do not address the issue of constructive knowledge.

After considering the evidence before it in the light most favorable to plaintiffs, this court concludes that plaintiffs' claims are barred by the applicable three-year statute of limitations.

### Causation

■ Section 1964(c) of RICO, 18 U.S.C. § 1964(c), confers standing to bring a private treble-damage action "upon any person injured in his business or property by reason of a violation of 18 U.S.C. § 1962," which prohibits conducting an enterprise through a pattern of racketeering activity. The statute thus incorporates a proximate-cause standard beyond which injuries are too remote from the RICO violation to justify remedial action. *See Cenco v. Seidman & Seidman,* 686 F.2d 449, 457 (7th Cir.), *cert. denied,* — U.S. —, 103 S.Ct. 177, 74 L.Ed.2d 145 (1982). This court concludes, as an independent ground upon which defendants' motions for summary judgment must be granted, that the uncontroverted facts show the absence of the requisite causal connection between violation and injury. The intervening fact of a collective bargaining agreement, duly negotiated by plaintiff's elected union representatives and covering all aspects of hiring, seniority, and layoffs severs any causal link between defendants' acts in 1977–1978 and plaintiffs' subsequent injuries.

Plaintiffs' complaint rests on a claim that the delay in their being hired by Miller resulted from an alleged agreement between the defendants and that the consequent unfavorable seniority positions they held at the Eden brewery resulted in their layoff. The undisputed facts establish that the Teamsters Union, not the Steelworkers, was elected as the bargaining agent of Miller's Eden employees and that the Teamsters negotiated collective bargaining agreements with Miller on behalf of those employees, first in 1978 and again in 1981. Those collective bargaining agreements negotiated by the Teamsters established the seniority provision that governed plaintiffs' layoffs. Indeed, the collective bargaining agreements were the sole basis on which employees at Miller's Eden brewery obtained seniority rights.

The undisputed facts also establish that the Teamsters were aware in the spring of 1978 of the alleged wrongful combination of Miller and the Steelworkers, as reflected in the NLRB charges adverted to above. The Teamsters, negotiating with knowledge of these charges of discriminatory hiring, had the authority to, and did bargain at arm's length with Miller over all of the contractual terms, including those concerning seniority. The Teamsters had the authority, moreover, to negotiate preferential seniority rights for anyone claiming discriminatory hiring. *Baker v. Newspaper and Graphic Communications Union, Local 6,* 628 F.2d 156 (D.C.Cir.1980); *Ekas v. Carling National Breweries, Inc.,* 602 F.2d 664 (4th Cir.1979), *cert. denied,* 444 U.S. 1017, 100 S.Ct. 669, 62 L.Ed.2d 646 (1980). The arm's length negotiations re-

sulted in a clause under which seniority was determined as of the date of an employee's employment with Miller. As a result, plaintiffs' seniority was established as of December 1978, when they were hired.

In light of these uncontested facts, the court concludes that, even if plaintiffs' suit had been timely filed, it would be necessary to grant summary judgment for defendants. The injuries plaintiffs complain of stem from supervening events—the provisions of collective bargaining agreements agreed to by plaintiffs' agent subsequent to the RICO violations plaintiffs allege. As a result, plaintiffs were not injured "by reason of" the alleged RICO violation.

For the reasons set forth in the Memorandum Opinion, the court will enter an Order simultaneously herewith dismissing the action of the plaintiffs.