TELTRONICS SERVICES, INC. and
Edward M. Beagan, Plaintiffs,

v.

ANACONDA–ERICSSON, INC., L.M. Ericsson Telephone Company, and Ericsson Telecomm, Inc., Defendants.

No. 83 CV 1401 (ERN).

United States District Court,
E.D. New York.

May 11, 1984.

**726**

Carl E. Person, Walter Reid, New York City, for plaintiffs.

Sullivan & Cromwell by Robert M. Osgood, Robinson B. Lacy, New York City and Richard G. Lyon, Greenwich, Conn., for defendants.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

From plaintiffs' 59-page, 131-paragraph complaint, defendants have isolated 23 separate claims which they contend entitle them to summary judgment by reason of defenses of res judicata, lack of standing, statute of limitations, or failure to state a claim upon which relief may be granted.

Plaintiff Edward M. Beagan is the president and founder of Teltronics, which was adjudicated a bankrupt in April 1980. In brief, he alleges an ongoing conspiracy, giving rise to various theories of liability, among and between the defendants to drive Teltronics out of business.

In January 1982 two of the defendants, L.M. Ericsson-U.S. (LMU) and L.M. Ericsson Telecomm, Inc. (LMB), merged into defendant Anaconda-Ericsson, Inc. Prior thereto LMU had distributed telephone equipment manufactured by L.M. Ericsson

(LME), a Swedish corporation, to United States customers through distributors. Until March 1979, Teltronics was one of these distributors, engaged in marketing, installing, and servicing the equipment. The allegations of plaintiffs' complaint depict a scenario in which stealth, greed, and treachery motivated defendants to dominate and take over the United States market for a class of telephone equipment.

In the mid-1970's Teltronics was a prosperous distributor of "interconnect" telephone equipment. In this same period, LME's American subsidiary acquired independent distributors in Boston, Philadelphia, and Florida for relatively modest amounts. Allegedly the subsidiary also targeted Teltronics as a matter of economic survival because, in 1978, Teltronics represented two-thirds of its interconnect business and thus an excellent vehicle for marketing a new line of updated equipment.

According to plaintiffs, the "takeover", orchestrated by LME in Sweden, followed a pattern. To ensure adequate financing for the purchase of LMU's equipment, LMU guaranteed Teltronics' loans with Nordic American Banking Corp. (Nordic), its affiliated bank, and Citibank. Under the loan agreement, Teltronics purchased a specified dollar amount of equipment in exchange for the loan guarantees. It also gave LMU a security interest in subsequent leases of the equipment, which leases eventually became Teltronics' largest asset. If Teltronics failed to buy the specified amount of equipment, which was always larger than the amount of the loan guarantee, Nordic could accelerate the repayment schedule. Plaintiffs assert that this "tie-in" arrangement allowed LMU to charge them 15% more for equipment than the New England distributor paid.

The significance of the arrangement lies in a business decision made by Beagan. In 1978 he moved Teltronics into direct competition with the New England distributor. At about the same time, Beagan was negotiating with Gerald Tsai, who sought to purchase 20% of Teltronics' stock. Plaintiffs claim that defendants mobilized to

thwart Tsai's interference because they believed that he represented a competing Japanese manufacturer. They also wanted Teltronics out of New England. Thus, they simultaneously continued to guarantee financing but refused to supply a "support letter", which apparently insured customer service and was vital to making the sale. Teltronics would not succumb, and by October 1978, after fending off Loral Corporation's attempted tender offer for Teltronics, defendants responded. They demanded that the guaranteed loans not be used in New England and stalled new loans, representing that these activities would end as soon as Teltronics withdrew from New England. The request to withdraw emanated directly from the parent corporation in Sweden.

Having failed to coerce Teltronics into submission, defendants then altered their course and sought to buy a controlling interest in the company. The negotiations were fruitful, and from the complaint, it is difficult to discern why the transaction never materialized and why plaintiffs reason that defendants chose to involuntarily bankrupt Teltronics rather than pay for the stock. The ensuing events may have related to Beagan's opposition to withdrawing from New England.

Negotiations continued through February 1979, at the end of which Teltronics owed Nordic an interest payment of approximately $230,000. On February 26, 1979 defendants informed Nordic that if Teltronics did not pay the interest the bank should charge their account. They deposited $250,000 for this purpose. Additionally, defendants agreed to a moratorium on Teltronics' principal and interest payments through March 31, 1979 in order to conclude financing negotiations, which included a proposed convertible bond issue of $25,000,000. On the basis of defendants' representations, Teltronics failed to make the interest payment. It also needed the cash on hand to continue purchasing equipment because defendants would only do business on a C.O.D. basis. The new terms were intended as a reaction to Teltronics' refusal to leave New England.

The acceleration clause proved Teltronics' undoing, however, when on or about February 28, 1979 defendants' attorneys, members of the firm of Sullivan & Cromwell, allegedly told Nordic not to credit Teltronics' account with the interest payment because defendants wanted a default. The expected default materialized, and the attorneys acted quickly to cut off Teltronics from alternate sources of money. As soon as defendants honored the loan guarantees, amounting to over $8,000,000, they moved to attach the equipment leases and issued a press release on the default. The price of Teltronics' stock plummeted, causing the Securities and Exchange Commission to suspend its trading. Instantly, Teltronics also lost $6,000,000 in signed contracts, owed $2,000,000 in accounts payable, and lost the rents from 2,300 leases in escrow. The bank that handled the payroll offset $1,000,000 in deposits against loans after learning of the attachment proceeding, which eventually was not successful. Additionally, Teltronics' creditors assembled and placed the company in bankruptcy, which ultimately resulted in the bankruptcy court declaring Teltronics a bankrupt on April 12, 1980. Plaintiffs add that the plot continues to the date of their complaint, April 12, 1983, because defendants have repeatedly interfered with Beagan's personal business dealings.

As one might expect, Teltronics did not wait until 1983 to seek recompense for defendants' alleged misdeeds. On March 8, 1979 Teltronics sued LME, LMB, and Nordic in the Southern District of New York. The four-count complaint alleged in: Count I, a securities law violation arising from alleged illegalities in negotiations whereby the instant defendants had offered to buy 30% of Teltronics' stock; Count II, a conspiracy effectuated by the above-described activities to compel the Teltronics Board of Directors to accept the offer; Count III, a nonspecific catch-all treble damage action under the antitrust laws; and Count IV, a demand for attorney's fees. Judge Lasker denied a motion for a preliminary injunction intended to bar de-

fendants from interfering in Teltronics' business. On May 14, 1979, Judge Knapp entered the following order:

"In this action, plaintiff Teltronics Services, Inc. ("Teltronics") seeks damages for what it claims were violations of federal and state securities and anti-trust laws. Named as defendants are the L.M. Ericsson Telephone Co., L.M. Ericsson Telecommunications, Inc. ("the Ericsson defendants") and the Nordic American Banking Corporation ("Nordic"). Defendants now move to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. After hearing oral argument on the record, we now grant defendants' motion under Rule 12(b)(6), Fed.R.Civ.P.

"The essential allegations of the complaint, as we understand it, are (1) that the Ericsson defendants proposed to purchase some 30% of Teltronics stock without filing notice of their intentions with the Securities and Exchange Commission; (2) that such filing was required by an unspecified section of the federal securities law; (3) that Teltronics, offended by this illegality and seeking a higher purchase price, rejected the Ericsson defendants' proposal; and (4) that defendants then embarked upon a course of conduct designed to coerce Teltronics into selling its stock without the required filing. The Ericsson defendants' principal weapon in this course of conduct was a state court action they commenced to recover from Teltronics some five million dollars that they had paid to Nordic as guarantors of loans upon which Teltronics had defaulted. In addition, the Ericsson defendants slowed down or stopped shipments of telephonic equipment that they had been making to Teltronics. Through these and 'various unnamed means and various other tactics' (complaint ¶ 45), defendants also sought to eliminate Teltronics as a competitor of the Ericsson defendants in the Boston area.

"Accepting as true all of plaintiff's factual allegations, we are unable to find any provision of the securities acts requiring a filing in the situation above described, or anything that would render defendants liable in damages for their pleaded actions.

"We accordingly grant defendants' motions to dismiss the complaint for failure to state a claim. The Clerk is directed to enter judgment dismissing the complaint."

In a footnote, Judge Knapp added:

"In its memorandum in opposition to this motion, plaintiff invoked Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a). That section is addressed to the solicitation of proxies. There is no claim of any such solicitation here."

There was no appeal from this judgment.

Armed with new counsel, Teltronics again sued LMB in the Southern District of New York. That complaint was substantially similar to the one before Judge Knapp except that it detailed the difficulties between Teltronics and the New England distributor. The causes of action in the two complaints were identical, which counsel admitted to Judge Lasker, who refused to apply res judicata mechanically in an order published at 486 F.Supp. 836 (S.D. N.Y.1980). On reconsideration, Judge Lasker changed his mind. 491 F.Supp. 538 (S.D.N.Y.1980), aff'd, 642 F.2d 31 (2d Cir.), cert. denied, 450 U.S. 978, 101 S.Ct. 1511, 67 L.Ed.2d 813 (1981).

Armed with yet a third set of counsel and relying on activities that occurred during the pendency of the bankruptcy, plaintiffs have brought this action. In so doing, they label every event from mid-1978 until now as part of the conspiracy and have intermingled federal and State claims which the Court must distill and separate.

Initially, however, the Court must determine whether Teltronics is properly before it. Plaintiff Beagan's attorneys do not represent Teltronics which is currently in the Bankruptcy Court. The trustee opposes this action. Parenthetically, the Court notes that the trustee pursued a similar set

of claims as alleged in the instant complaint in an adversary proceeding in the Bankruptcy Court and lost. *Matter of Teltronics Services, Inc.*, 29 B.R. 139 (Bkrtcy. E.D.N.Y.1983). Subsequently, the trustee settled all claims Teltronics had against defendants. The Bankruptcy Court's approval of that settlement was affirmed by order of this Court on March 29, 1984.

■ Before the debtor or anyone may pursue a claim, there must be a judicial determination that the trustee in bankruptcy has abandoned that claim. *Scharmer v. Carrollton Mfg. Co.*, 525 F.2d 95, 98 (6th Cir.1975) ("The trustee in bankruptcy, with the approval of the bankruptcy court, may elect to abandon assets of the bankrupt. Following abandonment title revests in the bankrupt."); *Hanover Insurance Co. v. TYCO Industries, Inc.*, 500 F.2d 654, 657 (3d Cir.1974) ("The party seeking to show abandonment has the burden of persuading the court that the Trustee intended to abandon the asset."); *Dallas Cabana, Inc. v. Hyatt Corp.*, 441 F.2d 865, 868 (5th Cir.1971) ("The remedy of the appellant is to petition the bankruptcy court to compel the trustee to bring suit or to authorize the bankrupt to sue or to make such disposition as appears to be appropriate in the circumstances and under the facts presented to the court."); *In re Teltronics Services, Inc.*, 39 B.R. 446, 448–449 (Bkrtcy.E.D.N.Y. 1984); *see Stein v. United Artists Corp.*, 691 F.2d 885, 890–91 (9th Cir.1982) (discussion therein); *In re Ira Haupt Co.*, 398 F.2d 607, 612–13 (2d Cir.1968) (discussion therein); *compare* 11 U.S.C. § 554.

■ The record fails to disclose that Teltronics has ever asked any court to declare an abandonment of these claims by the trustee. Moreover, the settlement left no room for additional litigation. It covered all of Teltronics' claims against defendants and thereby bars this action. *In re Allvend Industries Snacks by Toms, Inc.*, 29 B.R. 900, 903–04 (Bkrtcy.S.D.N.Y.1983); *see In re Furniture-In-The-Raw, Inc.*, 462 F.Supp. 958, 961 (S.D.N.Y.1979); *Milwee v. Peachtree Cypress Investment Co.*, 510 F.Supp. 279, 283 (E.D.Tenn.1977) ("A valid

compromise, settlement, or release operates as a bar of any future litigation arising out of the matters covered thereby, and any judicial examination into such matters is thereby foreclosed.") (Citations omitted.) Accordingly, defendants' motion for summary judgment against Teltronics is granted.

■ As part of their complaint, plaintiffs have filed a motion pursuant to Fed.R. Civ.P. 60(b) to vacate Judge Knapp's decision. This action undoubtedly stems, in part, from the Court of Appeals' opinion, *see* 642 F.2d at 35. However, it is settled that

"[t]he motion for relief from final judgment must be filed in the district court and in the action in which the original judgment was entered."

*Bankers Mortgage Co. v. United States*, 423 F.2d 73, 78 (5th Cir.1970), *cert. denied*, 399 U.S. 927, 90 S.Ct. 2242, 26 L.Ed.2d 793 (1970); *accord Taft v. Donellan Jerome, Inc.*, 407 F.2d 807, 809 (7th Cir.1969); *Porcelli v. Joseph Schlitz Brewing Co.*, 78 F.R.D. 499, 500 (E.D.Wis.1978), *aff'd*, 588 F.2d 838 (7th Cir.1978); *see United States ex rel. Aigner v. Shaughnessy*, 175 F.2d 211, 212 (2d Cir.1949). The record contains nothing which would warrant an exception to this rule. *See Indian Head National Bank of Nashua v. Brunelle*, 689 F.2d 245, 248–50 (1st Cir.1982). Accordingly, this portion of the complaint, ¶¶ 103–15, is ordered dismissed.

Turning to plaintiff Beagan's individual claims, defendants challenge at the outset his standing to assert most of them because they belong to Teltronics.

In *Associated General Contractors of California v. California Council of Carpenters*, 459 U.S. 897, 103 S.Ct. 897, 907–11, 74 L.Ed.2d 723 (1983), the Court established the factors to be considered in determining the standing of a plaintiff to assert an antitrust claim:

"Those factors include (1) the causal connection between the antitrust violation and harm to the plaintiff and whether that harm was intended to be caused;

(2) the nature of the plaintiff as consumer or competitor in the relevant market; (3) the directness or indirectness of the injury, and the related inquiry of whether the damages are speculative; (4) the potential for suplicative recovery or complex apportionment of damages; and (5) the existence of more direct victims of the alleged antitrust violation. 103 S.Ct. at 908–13."

*Province v. Cleveland Press Publishing Co.,* 571 F.Supp. 855, 864 (N.D.Ohio 1983); *accord Crimpers Promotions, Inc. v. Home Box Office, Inc.,* 724 F.2d 290 (2d Cir.1983); *McDonald v. Johnson & Johnson,* 722 F.2d 1370, 1374 (8th Cir.1983). These factors supplant the tests employed by prior caselaw. *Southhaven Land Co., Inc. v. Malone & Hyde, Inc.,* 715 F.2d 1079, 1085–86 (6th Cir.1983); *Indium Corp. of America v. Semi-Alloys, Inc.,* 566 F.Supp. 1344, 1351 n. 4 (N.D.N.Y.1983).

■ Unquestionably, Teltronics is the most direct victim of the alleged antitrust violation. *See, e.g., Industrial Investment Development Corp. v. Mitsui & Co., Ltd.,* 704 F.2d 785 (5th Cir.1983) (*per curiam*), *rehearing denied* 709 F.2d 712 (5th Cir. 1983), *cert. denied,* — U.S. —, 104 S.Ct. 393, 78 L.Ed.2d 337 (1983). It has settled its claims. *See Meyer Goldberg, Inc. of Lorain v. Goldberg,* 717 F.2d 290, 294 (6th Cir.1983). Under the circumstances, therefore, Beagan must demonstrate or plead antitrust claims belonging to him alone, and not Teltronics, to avoid a duplicative recovery. *Stein v. United Artists Corp.,* 691 F.2d 885, 896–97 (9th Cir.1982) (discussion therein). The allegations stemming from his dealing with defendants as an official of Teltronics authorized to act on its behalf, ¶¶ 20–63, will not suffice. *See Guthrie v. Genesee County, N.Y.,* 494 F.Supp. 950, 954 (W.D.N.Y.1980); *compare Schroeter v. Ralph Wilson Plastics, Inc.,* 49 F.R.D. 323, 326 (S.D.N.Y.1969); *New Sanitary Towel Supply, Inc. v. Consolidated Laundries Corp.,* 211 F.Supp. 276 (S.D.N.Y.1963), *adhered to* 213 F.Supp. 123 (S.D.N.Y.1963). Moreover, the allegations in ¶¶ 116–19 of the complaint relate only to Teltronics as a victim of alleged price fix-

ing, an alleged restraint of trade, an alleged tie-in arrangement, alleged price discrimination, and an alleged violation of § 73 of the Wilson Tariff Act. In ¶ 128 Beagan momentarily separates and identifies acts injurious to him but states that both plaintiffs were injured. He adds in ¶ 129 that the acts committed in ¶ 128 were intended to eliminate him personally as a competitor of defendants.

The Court finds these allegations to be immaterial. If Beagan competed at all, he did so only in an official capacity as part of Teltronics. The requisite nexus between the asserted injury and the alleged antitrust violation is lacking. *See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 488–89, 97 S.Ct. 690, 697–98, 50 L.Ed.2d 701 (1977). Similarly, the allegations of ¶ 128E are immaterial. This paragraph merely alleges interference with Beagan's efforts to promote Satellite Systems, Inc., a telecommunications company. Defendants allegedly caused Beagan to lose his stock interest and corporate positions therein. However, although he may have suffered injury in fact, Beagan was not the target of the allegedly anticompetitive practices. *See In re Industrial Gas Antitrust Litigation,* 681 F.2d 514, 519 (7th Cir.1982), *cert. denied sub nom. Bichan v. Chemetron Corp.,* 460 U.S. 1016, 103 S.Ct. 1261, 75 L.Ed.2d 487 (1983); *see also Quality Foods de Centro America, S.A. v. Latin American Agribusiness Development Corp., S.A.,* 711 F.2d 989, 999 (11th Cir.1983). Accordingly, the federal antitrust claims are ordered dismissed.

■ Citing *Saxe, Bacon & Bolan, P.C. v. Martindale-Hubbell, Inc.,* 521 F.Supp. 1046, 1048–49 (S.D.N.Y.1981), *aff'd,* 710 F.2d 87 (2d Cir.1983), defendants additionally contend that plaintiffs' invocation of New York's Donnelly Act, N.Y.Gen. Bus.Law § 340 (McKinney's), must suffer the same fate. In construing the treble damages provision of § 340, the New York courts have required an allegation of direct damage personal to plaintiff, *Metropolitan Tobacco Co., Inc. v. Shotz,* 93 Misc.2d 671,

402 N.Y.S.2d 955, 957–58 (Sup.Ct. Queens Co. 1978), or have followed the antitrust standing test applied by the federal courts. *E.g., Lerner Stores Corp. v. Parklane Hosiery Co., Inc.,* 86 Misc.2d 215, 381 N.Y. S.2d 968 (Sup.Ct. Monroe Co. 1976), *aff'd on other grounds,* 54 A.D.2d 1072, 388 N.Y.S.2d 760 (4th Dept. 1976) (memorandum); *Neeld v. National Hockey League,* 439 F.Supp. 446, 454–55 (W.D.N.Y.1977). For the reasons already stated, either approach compels a dismissal of this claim.

■ Additionally, the Court finds that the following claims belong only to Teltronics: commonlaw fraud, ¶¶ 67–70; breach of contract, ¶¶ 71–74 (the Court notes the lack of any allegation that Beagan was a party to the loan agreements); interference with advantageous business relationships, ¶¶ 75–76, except to the extent that ¶ 76 merely duplicates claims belonging to Beagan and alleged elsewhere (standing alone, absolutely nothing in any of the various subparagraphs of ¶ 76 adequately states a claim for any relief); breach of confidential relationship, ¶¶ 77–80; abuse of process, ¶¶ 81–83, except ¶ 81B and ¶ 81D, which relate to Beagan and are dismissed for failure to state a claim upon which relief may be granted, *see Ann-Margret v. High Society Magazine, Inc.,* 498 F.Supp. 401, 407 (S.D.N.Y.1980) (discussion therein); usury, ¶¶ 97–101; restitution, ¶ 102; and negligent misrepresentation, ¶ 127.

■ In ¶¶ 121–26, Beagan attempts to sustain alleged violations of the Securities Act of 1933, 15 U.S.C. §§ 77(1), (2), 77q(a), and 77v(a), and the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78aa, and their accompanying rules (specifically Rule 10b–5) on the theory that he was a "forced seller", an exception to the actual purchase or sale required to invoke the protections of the federal securities laws.

Beagan reasons that he is a forced seller because the bankruptcy liquidation of Teltronics has converted his shares to a claim for cash in a nonfunctioning entity. The Court accepts that in certain circumstances, a bankruptcy liquidation may constitute

a sale for purposes of § 10(b) and Rule 10b–5 of the Securities Exchange Act of 1934. *See Ingenito v. Bermec Corp.,* 376 F.Supp. 1154, 1177 (S.D.N.Y.1974); *see also Bolger v. Laventhol, etc.,* 381 F.Supp. 260, 265–66 (S.D.N.Y.1974).

> "There remains the issue whether there exists the requisite nexus between the alleged fraud and such a sale, so as to be actionable under Rule 10b–5. To satisfy the 'in connection with' requirement, the injury caused to plaintiff must have been 'a result of deceptive practices touching its sale of securities as an investor.' To satisfy the requirement, 'the alleged fraud must be intrinsic to the securities transaction itself.' "

*Rich v. Touche Ross & Co.,* 415 F.Supp. 95, 100 (S.D.N.Y.1976) (citations omitted). Recently the Court of Appeals has held that misrepresentations or omissions involved in a securities transaction but not pertaining to the securities themselves do not violate § 10(b) or § 17(a) of the Securities Act of 1933. *Chemical Bank v. Arthur Andersen & Co.,* 726 F.2d 930, 943 (2d Cir.1984). This holding implicitly recognizes that

> "unless the relevant securities transaction was an integral or helpful component of the fraudulent scheme, such a scheme cannot be 'in connection with' the purchase or sale of a security."

*Natowitz, etc. v. Mehlman,* 567 F.Supp. 942, 947 (S.D.N.Y.1983); *e.g., Alley v. Miramon,* 614 F.2d 1372, 1387 (5th Cir.1980).

The fraudulent scheme alleged in the complaint consists of a plot to plunge Teltronics into bankruptcy. ¶ 120. Assuming the success of the plot as alleged in the complaint, the separation of Beagan or any other Teltronics' shareholder from their shares was hardly integral to bankrupting the corporation. Moreover, the asserted misrepresentation, contained in a press release, was that Teltronics had defaulted on loans from Nordic and Citibank. Although the default may have been excused, or Teltronics may have had a defense to a suit by the banks, it nevertheless defaulted when it failed to make the interest payment on time. Began also cites an omission in that

the press release failed to state that Teltronics had adequate assets to pay the loans. The availability of money would not preclude a default, and in these circumstances, the asserted solvency of Teltronics is irrelevant to the fraud alleged to have precipitated its rapid demise. That fraud was defendants' alleged promise to make the interest payments if Teltronics did not do so. Teltronics' possible State law claim for commonlaw fraud arising from this deceit has been settled. The attenuation between this misrepresentation and the securities involved in any subsequent sale, forced or otherwise, is apparent from the pleaded facts. Accordingly, the Court dismisses Beagan's attempted invocation of 15 U.S.C. § 77q(a) and § 78j(b). For the same reasons, the Court must also dismiss the State claims pursuant to N.Y.Gen.Bus.Law §§ 339-a, 339-b, and 352-c. *See In re Investors Funding Corp., etc.*, 523 F.Supp. 533, 544 (S.D.N.Y.1980). The Court additionally dismisses the claim pursuant to 15 U.S.C. § 77(1)(2) as time barred under 15 U.S.C. § 77m, and the claim pursuant to N.Y.Gen.Bus.Law § 349(h), because it arose prior to that section's effective date of June 19, 1980. *Burns v. Volkswagen of America, Inc.*, 118 Misc.2d 289, 460 N.Y. S.2d 410, 412 (Sup.Ct. Monroe Co. 1982), *aff'd*, 97 A.D.2d 977, 468 N.Y.S.2d 1017 (4th Dept. 1983) (memorandum).

■ In ¶¶ 92–96 Beagan raises an additional claim pursuant to the Securities Exchange Act of 1934, 15 U.S.C. §§ 78m(d) and 78n(e). He alleges that once defendants had conspired, in January or February 1979, to take over Teltronics by pushing it into bankruptcy, they should have filed takeover disclosure documents. Section 78m(d)(1) requires a disclosure statement after a purchaser has acquired more than 5% of a registered class of shares. There is no allegation that defendants ever acquired 5% or more of Teltronics' stock. Accordingly, this claim is dismissed. Similarly, Beagan's reliance on N.Y.Bus. Corp.Law § 1600, *et seq.*, is misplaced. There is no allegation of a "takeover bid", § 1601(a), so as to trigger the reporting requirements of §§ 1602 and 1603. This claim is also dismissed.

■ Having dismissed the securities claims, the Court has eliminated one of the six predicate felonies alleged to sustain Beagan's claim pursuant to the Racketeer Influence and Corrupt Organizations Act (RICO), 18 U.S.C. § 1964(c). *See. Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 19 (2d Cir.1983); *Somerville v. Major Exploration, Inc.*, 576 F.Supp. 902, 913 (S.D.N.Y. 1983). Section 1964(c) provides:

"Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee."

Although the Court of Appeals has emphasized the broad sweep of RICO, *Moss, supra* 20–21, it has not suggested an application beyond the statutory language itself. As pointed out in *Bankers Trust Co. v. Feldesman*, 566 F.Supp. 1235, 1240–41 (S.D.N.Y.1983) (appeal pending):

"The words of § 1964 expressly require that a private plaintiff be injured 'by reason of a violation of section 1962' in order to maintain an action for damages. Unless these words have no effect, they can only mean that the plaintiff's injuries must derive from the 'pattern of racketeering activity' which violates § 1962 rather than directly from the underlying acts which combine to constitute that pattern."

The Court interprets this requirement as one of proximate causation. *Seawell v. Miller Brewing Co.*, 576 F.Supp. 424, 430 (M.D.N.Car.1983); *Kirschner v. Cable/Tel Corp.*, 576 F.Supp. 234, 244 (E.D.Pa.1983) ("The requirement of 'injury by reason of violation of section 1962' should be read as simply requiring that the plaintiff was injured by at least two acts of racketeering activity."); *cf. Swanson v. Wabash, Inc.*, 577 F.Supp. 1308, 1320 (N.D.Ill.1983). In *Waste Recovery Corp. v. Mahler*, 566 F.Supp. 1466 (S.D.N.Y.1983), Judge Knapp expressed the understandable frustration a court confronts in disposing of a civil RICO

claim and noted that "The Court of Appeals may wish soon to address the question of what limits, if any, should be imposed on the reach of civil RICO liability." *Id.* at 1468. However, for purposes of this motion, the Court finds sufficient proximate causation on the basis of Judge Posner's recent opinion in *Sutliff v. Donovan Companies, Inc.*, 727 F.2d 648 (7th Cir.1984). *See also Eisenberg v. Gagnon*, 564 F.Supp. 1347, 1352–53 (E.D.Pa.1983); *Crocker National Bank v. Rockwell International Corp.*, 555 F.Supp. 47 (N.D.Cal.1982). Despite some lingering doubt, this finding eliminates any need to enter the thicket of "competitive injury" requirements, "racketeering enterprise injury" requirements, or analogies to the antitrust laws, all of which have become part of the civil RICO case law, *Moss, supra*, 719 F.2d at 20 n. 16; *Schacht v. Brown*, 711 F.2d 1343 (7th Cir.), *cert. denied*, — U.S. —, 104 S.Ct. 508, 78 L.Ed.2d 698 (1983); *Furman v. Cirrito*, 578 F.Supp. 1535 (S.D.N.Y.1984); *Haroco v. American National Bank, etc.*, 577 F.Supp. 111 (S.D.N.Y.1983); *Sedima S.P. R.L. v. Imrex Co., Inc.*, 574 F.Supp. 963 (E.D.N.Y.1983); *Guerrero v. Katzen*, 571 F.Supp. 714 (D.D.C.1983), although recently the Court of Appeals analogized RICO to the Clayton Antitrust Act in awarding attorney's fees. *Aetna Casualty and Surety Co. v. Liebowitz*, 730 F.2d 905 (2d Cir. 1984).

The Court also need not rest its judgment entirely upon Beagan's failure to plead facts falling within the ambit of the asserted predicate felonies of bankruptcy fraud, obstruction of justice, and interference with a criminal investigation, *see Beth Israel Medical Center v. Smith*, 576 F.Supp. 1061, 1071 (S.D.N.Y.1983); *Taylor v. Bear Stearns & Co.*, 572 F.Supp. 667, 682–83 (N.D.Ga.1983); *Eaby v. Richmond*, 561 F.Supp. 131, 136 (E.D.Pa.1983); *Bache Halsey Stuart Shields, Inc. v. Tracy Collins Bank & Trust Co.*, 558 F.Supp. 1042 (D.Utah 1983), because Beagan's RICO claim is time barred. *See Seawell, supra*, 576 F.Supp. at 427; *see also Durante Bros. and Sons, Inc. v. Flushing National Bank*, 571 F.Supp. 489, 491–93 (E.D.N.Y. 1983).

RICO contains no statute of limitations; thus, the Court must borrow the New York statute of limitations governing an analogous cause of action. *See Board of Regents, etc. v. Tomanio*, 446 U.S. 478, 483, 100 S.Ct. 1790, 1794, 64 L.Ed.2d 440 (1980). New York Civ.Prac.Law § 214 provides in pertinent part:

"The following actions must be commenced within three years:

. . . .

"2. an action to recover upon a liability, penalty or forfeiture created or imposed by statute except as provided in sections 213 and 215;"

No portion of § 215 is applicable. While an argument might be made that § 213(9) (action based on fraud; six-year limitation) governs, this reasoning would oversimplify the elements of a RICO claim. The injury must stem from a pattern of racketeering activity. 18 U.S.C. § 1962. A pattern of racketeering activity need not have fraud as a constituent part at all. 18 U.S.C. § 1968. Consequently, under the RICO statutory scheme, depending upon the allegations, the number of relevant State statutes of limitations could vary from case to case. As a result, the policy considerations which motivated the Court of Appeals to apply § 214(2) uniformly to suits invoking 42 U.S.C. § 1983, *Pauk v. Board of Trustees, etc.*, 654 F.2d 856 (2d Cir.1981), *cert. denied*, 455 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d 866 (1982), apply with equal force to RICO claims. *See also Staples v. Avis Rent-A-Car System, Inc.*, 537 F.Supp. 1215, 1218 (W.D.N.Y.1982) (applying *Pauk* to claims invoking 42 U.S.C. § 1981). Accordingly, the RICO claim is dismissed as time barred.

Finally, the Court turns to claims assertedly belonging to Beagan due to alleged injuries to his property. In ¶ 64 of the complaint Beagan alleges that in June 1979 defendants interfered with his attempts to merge Teltronics into Stromberg-Carlson, a subsidiary of General Dynamics. Any claim for defamation arising from these allegations is barred by the one-year limitation of N.Y.Civ.Prac. Law

§ 215(3). Similarly, the claim for interference with a prospective business relationship is time barred by the three-year limitation of N.Y.Civ.Prac.Law § 214(4). *See Von Ludwig v. Schiano*, 23 A.D.2d 789, 258 N.Y.S.2d 661, 663 (2d Dept. 1965) (memorandum). In ¶ 65 Beagan alleges an unlawful interference with and conversion of equipment leases belonging to him. Specifically, defendants somehow swept his property into the attachment proceeding before the State court in March 1979, which proceeding Beagan admits was unsuccessful, and into the proceeding they brought in the bankruptcy court in September 1979 to obtain a declaration of their secured interest in Teltronics' equipment leases after Teltronics had petitioned for a Chapter 11 reorganization. This claim is also time barred by the three-year limitation of § 214(4). *See Two Clinton Square Corp. v. Friedler*, 91 A.D.2d 1193, 459 N.Y. S.2d 179, 181 (4th Dept.1983).

The remainder of Beagan's claims are either specious or repetitive. Robert Lyon, Esq., counsel to defendants, has submitted an affidavit in which he denies the allegations after having consulted with the appropriate individuals. He avers that defendants did not interfere in Beagan's attempts to obtain a finder's fee as an intermediary in a merger of two "interconnect companies", complaint ¶ 66; defendants did not interfere in Beagan's banking relationship with Morgan Guaranty Trust Co.; defendants did not encourage Teltronics' former employees to bring criminal proceedings against Beagan, complaint ¶ 128A; and defendants did not interfere with Beagan's relationship to Satellite Systems, Inc., complaint ¶ 128.

Concerning the claim that defendants caused the Securities and Exchange Commission to enjoin Beagan, complaint ¶ 128F, Lyon responds that defendants simply answered subpoenas and submitted documents. Beagan has furnished nothing to counter these supported denials of his vague and conclusory allegations. Moreover, ¶¶ 128B, C, and D merely reiterate, in conclusory form, many of the preceding allegations, and when read in conjunction with ¶ 129, it appears that all the allegations of ¶ 128 are intended to support the antitrust claims and not to plead separate causes of action. Whatever the intent, those allegations, ¶¶ 66 and 128, are all dismissed along with the claim for prima facie tort, complaint ¶ 131R. *See Cruz v. Triangle Affiliates, Inc.*, 571 F.Supp. 1218, 1222–23 (E.D.N.Y.1983) (discussion and cases cited therein).

On the basis of the foregoing, defendants' motion for summary judgment is in all respects granted, and the complaint is ordered dismissed. In its discretion, the Court denies defendants' requests for attorney's fees but will enjoin Beagan from further litigating claims belonging to Teltronics.

SO ORDERED.